IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-740-FL

| | | |
|---|---|---|
| RALPH L. FALLS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GOLDMAN SACHS TRUST | ) | |
| COMPANY, N.A. as Executor of the | ) | |
| Estate of Ralph L. Falls, Jr.; GOLDMAN | ) | |
| SACHS TRUST COMPANY, N.A. | ) | |
| as Trustee of the Ralph Lane Falls | ) | |
| Revocable Declaration of Trust; DIANE | ) | |
| C. SELLERS; LOUISE FALLS CONE | ) | |
| individually and on behalf of her minor | ) | |
| children and unborn issue; TOBY CONE; | ) | |
| MARY COOPER FALLS WING | ) | |
| individually and on behalf of her minor | ) | |
| children and unborn issue; GILLIAN | ) | |
| FALLS CONE individually and on behalf | ) | |
| of her minor children and unborn issue; | ) | |
| K.L.C. by her next friends and parents, | ) | |
| Louise Falls Cone and Toby Cone, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon motion to dismiss plaintiff's claim for breach of lease, filed by defendant Goldman Sachs Trust Company, N.A. ("Goldman Sachs") (DE 36); motion to excuse defendants Gillian Falls Cone and K.L.C. from physically attending mediation (DE 83); and two motions filed by John C. Hine ("Hine") to quash subpoenas (DE 85, 98). The issues raised have been briefed fully and are ripe for ruling. For the reasons that follow, the motion to dismiss is granted, motion to excuse is granted, and motions to quash are granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this action on August 12, 2016, asserting the following claims: 1) claim seeking declaration that a certain Fifth Amendment to Revocable Declaration of Trust of Ralph L. Falls, Jr. is invalid; 2) tort claim of malicious interference with the right to inherit, asserted against defendant Dianne C. Sellers ("Sellers"); 3) breach of lease claim against the Estate of Ralph L. Falls, Jr. (the "Estate"); 4) alternative claim seeking declaration regarding the enforcement of a lease provision in the Fifth Amendment to Revocable Declaration of Trust of Ralph L. Falls, Jr. Plaintiff seeks declaratory relief and damages, as well as costs and attorney's fees.

Defendant Goldman Sachs filed the instant motion to dismiss the breach of lease claim on November 2, 2016, on the basis that the claim is barred by statute of limitations on its face. After remaining defendants filed answers, this court held a Rule 16(b) scheduling conference on January 3, 2017, whereupon the court set forth a case schedule to include an initial period of discovery to facilitate early global settlement efforts, in the instant case and a separate case involving plaintiff and defendant Goldman Sachs arising out of an alleged breach of loan agreement, No. 5:14-CV-777-FL (the "Loan Case").

To promote the global settlement, the court stayed all case activities in the Loan Case, including trial, pending completion of an initial phase of discovery in the instant case memorialized in January 5, 2017, order and January 17, 2017, consent order (the "scheduling orders").

On February 24, 2017, defendants Gillian Falls Cone ("Gillian"), Louise Falls Cone ("Cone"), Toby Cone, and K.L.C. (collectively, the "Cone defendants") filed the instant motion to excuse Gillian and K.L.C. from physically attending mediation. They note that "the parties have tentatively reached an agreement to mediate this matter on June 5, 2017, before mediator Ray

Owens." (DE 83 at 2). The Cone defendants request that Gillian, who is 19, be available by telephone, and that K.L.C., who is 17, be excused altogether from participation in mediation. Plaintiff and defendant Mary Cooper Falls Wing ("Wing"), confirming agreement of the parties to mediate on June 5, 2017,[1] oppose the motion in part, and do not object to excusing K.L.C.'s attendance, so long as Gillian is ordered to attend physically and represent the interests of K.L.C. The Cone defendants filed a reply, including attachment of affidavit by Gillian.

In the meantime, on February 28, 2017, and April 19, 2017, Hine, an attorney who advised Decedent in trust and estate matters for a number of years up to about 2013, filed the instant motions to quash subpoenas served by plaintiff and defendant Sellers, on the basis that the subpoenas seek documents protected by attorney-client privilege and, in some instances, documents that are irrelevant to the instant matter.[2] Upon order by this court, Hine submitted for in camera review a sampling of documents responsive to the subpoena served by plaintiff. Plaintiff and defendant Sellers have filed separate responses in opposition.

_____

[1] In light of the parties' agreement to undertake mediation on June 5, 2017, the court dispenses with telephonic hearing made reference to in its scheduling orders, the purpose of which was to determine a date for mediation. If, however, any party seeks to have a telephonic conference with the court at the close of the initial period of discovery, prior to mediation, any motion shall be filed on or before **May 26, 2017**, and said motion shall represent the position of the other parties on the motion. The parties shall file a joint status report on or before **June 19, 2017,** specifying whether mediation completed successfully, and, if not, whether the parties seek additional time for early settlement activities prior to entry of a case management order governing remaining deadlines in this matter and trial in the Loan Case.

[2] In addition, attorney John Hutson ("Hutson") filed an objection on the docket on April 11, 2017, to subpoena served by defendant Sellers, on grounds that the subpoena seeks privileged materials, is unduly burdensome, and is overbroad. Through communication with the clerk, Hutson suggested that the filing was made for purposes of preserving objection at this time.

**STATEMENT OF FACTS**

Ralph L. Falls, Jr.,  a citizen and resident of Wake County, North Carolina, died at the age of 74 on May 11, 2015 .  Decedent's adult children are plaintiff, Cone, and Wing.  The facts alleged in the complaint are summarized as follows for purposes of the instant motions.

A.     Decedent's Trust and Estate Planning

For decades until about 2013, Decedent continuously employed the services of and relied upon the advice of Hine to handle all aspects of his estate planning. Throughout Hine's representation of Decedent, Decedent's clear intention, as evidenced through contemporaneous documents, was to leave the bulk of his estate to his children, including plaintiff.

Decedent established in 2002 a qualified personal residence trust, which provided that upon expiration of a ten-year term, the trust property, including a house on Evans Street in Morehead City, North Carolina (the "Morehead City house") that Decedent used as his personal residence, would pass to plaintiff, outright and free of trust.  In 2005, anticipating that title to the Morehead City house would pass to plaintiff August 30, 2012, plaintiff and Decedent executed a lease (the "Lease"), subject of the instant breach of lease claim, whereby Decedent (as tenant) agreed to rent the Morehead City house from plaintiff (as landlord) starting August 30, 2012, for a one-year term, with option to renew fifteen years thereafter, with monthly rent paid in "a monthly sum mutually agreed between [plaintiff] and [Decedent]," or if not agreed then to be determined by a qualified appraiser.  (DE 1-3 at 2).

Decedent began a relationship with Sellers in or around 2008.  Decedent consulted with Hine about his estate plan in or around 2010 and executed a purported last will and testament prepared by Hine (hereinafter, "the purported will prepared by Hine") that made clear his intentions that

4

Sellers was not to be a beneficiary of his estate. Decedent named Sellers as executrix of his estate in order that she would receive only a commission for administering his estate and would otherwise not share as a beneficiary in Decedent's estate.

In or around August 2011, without explanation or notice to Hine, Decedent engaged Walter Brodie Burwell, Jr., Esq. ("Burwell") to change his estate planning documents. Sellers convinced Decedent to retain Burwell, with whom she had a pre-existing attorney-client relationship, as part of her plan to influence Decedent to change his estate planning documents to include her as a beneficiary of Decedent's estate. On or about August 4, 2011, Decedent executed the Ralph Lane Falls Revocable Declaration of Trust (the "Revocable Trust") prepared by Burwell. The Revocable Trust was the primary instrument that provided how Decedent's assets would be distributed upon his death. Decedent transferred most of his real and personal property to the Revocable Trust during his lifetime. Defendants, including Sellers, the Cone defendants, and Wing have or claim an interest in the Revocable Trust.

Decedent experienced a number of serious health issues from 2012 until his death in 2015. These health issues increased Decedent's dependence on Sellers and others controlled by Sellers to provide for his health and safety. Decedent executed a Health Care Power of Attorney designating Sellers as his health care agent in September 2012, and a General Power of Attorney designating Sellers as his attorney-in-fact in January 2013. Sellers took numerous steps to interfere with and destroy the relationship between Decedent and plaintiff and to deny plaintiff access to Decedent until his death, including causing Decedent to pursue the Loan Case against plaintiff in November 2014, asserting therein that plaintiff failed to repay a loan to Decedent.

Decedent executed a purported last will and testament on or about July 17, 2014, prepared by Burwell (the "purported will prepared by Burwell"), which conveyed all of Decedent's real and personal property to a trustee acting under the Revocable Trust, as then amended. On December 10, 2014, Decedent executed a Fifth Amendment to the Revocable Trust (the "Fifth Amendment"), prepared by Burwell, "which disinherit[s] [plaintiff] and make[s] [Sellers] the largest beneficiary of Decedent's estate." (Compl. ¶ 65). Plaintiff is "not a beneficiary" of the Fifth Amendment. (Id. ¶ 75). The Fifth Amendment designates Goldman Sachs as trustee upon Decedent's death, with Sellers and Cone designated as successor trustee in the event of Goldman Sachs's removal or failure to act. (DE 1-12 at 5). The Fifth Amendment also directs the trustee to "keep all leases in full force and effect and fully perform all obligations existing" under the Lease. (DE 1-12 at 4). Under the terms of the Fifth Amendment, a substantial portion of Decedent's estate is to pass outside of probate under the Revocable Trust.

On December 10, 2014, Decedent and Sellers obtained a certificate of marriage in Wake County, North Carolina. On that date of both the execution of the Fifth Amendment and purported marriage, Decedent was suffering from diminished mental capacity as the result of recurrence of brain tumors, was dependent upon and submissive to Sellers, and did not have the capacity of dispose of property, execute estate planning documents, or marry.

During his lifetime, Decedent never agreed on a fair market value of rent, and never paid any rent to plaintiff under the Lease. Goldman Sachs has refused to make any rental payments to plaintiff. Plaintiff alleges that the fair market value rental amount under the Lease is $2,500.00 per month.

B.    The Estate Proceeding

On June 8, 2015, the Wake County Clerk of Superior Court admitted to probate Decedent's purported will prepared by Burwell.  That same date, on the basis thereof, the Wake County Clerk of Superior Court appointed Goldman Sachs as Executor of the Estate in File No. 15-E-1997 (the "Estate Proceeding").  On September 4, 2015, Goldman Sachs filed an "Inventory for Decedent's Estate," specifying property of the Estate valued at $29,517.31. (DE 1-13). On September 10, 2015, plaintiff filed a creditor's claim in the Estate Proceeding, seeking to recover $255,000.00, plus rent and other amounts due, based upon the Lease.  On February 6, 2016, Goldman Sachs filed in the Estate Proceeding a rejection of plaintiff's creditor's claim, along with a complaint for declaratory judgment seeking a declaration that the Estate is not liable to plaintiff under creditor's claim and requesting the clerk to transfer that proceeding to Wake County Superior Court.

On March 3, 2016, plaintiff removed the Estate Proceeding to this court based upon diversity of citizenship.  While pending in this court, plaintiff filed in the Estate Proceeding an answer to the complaint for declaratory judgment and counterclaim premised upon Decedent's breach of the Lease, among other counterclaims.  On March 30, 2016, Goldman Sachs filed a motion to remand on the basis that plaintiff properly should be treated as a plaintiff in the Estate Proceeding, for purposes of the federal removal statute.  This court granted the motion to remand on that basis on July 15, 2016.  After remand of the Estate Proceeding to state court, plaintiff moved therein on July 20, 2016, to dismiss for lack of subject matter jurisdiction Goldman Sachs's complaint for declaratory judgment and request for transfer.  The Wake County Clerk of Superior Court granted the motion to dismiss for lack of subject matter jurisdiction on September 2, 2016.

**COURT'S DISCUSSION**

A.      Motion to Dismiss (DE 36)

      1.      Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).  While a motion to dismiss ordinarily "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), "[a] court may grant a 12(b)(6) motion on statute of limitations grounds . . . if the time bar is apparent on the face of the complaint." Semenova v. Maryland Transit Admin., 845 F.3d 564, 567 (4th Cir. 2017) (quotations omitted).

      2.      Analysis

In his breach of lease claim, plaintiff seeks to recover from the Estate "rent due and owing under the Lease," in addition to "damages caused to the [Morehead City house] as a result of the failure by the Decedent and the Estate to properly maintain [it] during the term of the Lease." (DE 110).  Defendant Goldman Sachs moves to dismiss on the basis that the claim is barred by the statute of limitations contained in N.C. Gen. Stat. § 28A-19-16.

8

If a claim is presented to and rejected by the personal representative or collector, and not referred as provided in G.S. 28A-19-15, the claimant must, within three months, after due notice in writing of such rejection, commence an action for the recovery thereof, . . . or be forever barred from maintaining an action thereon.

N.C. Gen. Stat. § 28A-19-16. "The purpose of this statute is to expedite the administration and settlement of estates." Rutherford v. Harbison, 254 N.C. 236, 238 (1961) (applying predecessor version of statute, at N.C. Gen. Stat. § 28-112). "The language is positive and explicit, and the section must be enforced in accordance with the plain meaning of its terms." Id.

Here, plaintiff filed "a Creditor's Claim" in the Estate Proceeding seeking to recover rent and other amounts accruing under the Lease on September 10, 2015. (Compl. ¶ 76; see Estate Proceeding, No. 5:16-cv-98-FL (DE 1-1)). Defendant Goldman Sachs, as executor, filed a rejection of the Creditor's Claim in the Estate Proceeding on February 4, 2016, (Compl. ¶ 78; see Estate Proceeding, No. 5:16-cv-98-FL (DE 1-2)), triggering commencement of the three month time period for plaintiff to "commence an action for the recovery thereof." N.C. Gen. Stat. § 28A-19-16. Plaintiff commenced the instant action on August 12, 2016, over three months after expiration of the limitations period set forth in § 28A-19-16. Therefore, plaintiff's breach of lease claim against the Estate is barred by the statute of limitations.

Plaintiff argues nonetheless that he satisfied requirements of § 28A-19-16, because he commenced an action on his creditor's claim by filing a counterclaim within the Estate Proceeding in this court on March 17, 2016. (See Estate Proceeding, No. 5:16-cv-98-FL (DE 15 at 14-15)). The state court, however, dismissed the Estate Proceeding for lack of subject matter jurisdiction, upon plaintiff's motion, after remand to state court. (DE 37-1; 51-1). Commencement of a prior action dismissed for lack of subject matter jurisdiction does not serve to toll the running of this statute of limitations under North Carolina law, unless the dismissal order specifies an extension of the

limitations period.  See N.C. Rule of Civil Procedure 41(b) (providing that dismissing court may "specify in its order that a new action based on the same claim may be commenced within one year or less after such dismissal"); see also Hargrave v. Gardner, 264 N.C. 117, 119 (1965) (finding no indication "that defendant has waived his right to plead the statute [of limitations]; the court has no authority to waive it for him or to deprive him of this or any other defense, and has not undertaken to do so"); 84 Lumber Co. v. Barkley, 120 N.C. App. 271, 272 (1995) (holding that where dismissing "order contains no specification whatsoever with regard to the time in which plaintiff may commence a new action based on the same claim . . . the applicable statute of limitations is controlling with regard to the time in which plaintiff was allowed to refile").

Plaintiff next argues that his counterclaim filed in the Estate Proceeding is to be "given effect" in the instant action in order to prevent the breach of lease claim from being time-barred. The case law plaintiff cites as a basis for this argument, however, does not support the proposition asserted.  Rather, the cases cited reflect the undisputed proposition that documents timely filed in federal court prior to remand must be given effect in the same proceeding once remanded to state court. See, e.g, McKethan v. Wells Fargo Bank, N.A., 779 S.E.2d 671, 674 (Ga. Ct. App. 2015) ("Where, as here, a pleading . . . has been timely filed, logic, reasoning and comity all support the conclusion that a similar rule should be applied by the Georgia courts upon remand.").  Whether the state court in the Estate Proceeding gave effect to the filings plaintiff made in federal court is an issue not before this court.

Plaintiff also suggests that this court should deem the breach of lease claim timely filed because defendant Goldman Sachs has "long known of [plaintiff's] claim for rent due under the Lease."  (DE 51 at 11).  Defendant Goldman Sachs's knowledge of plaintiff's claim for rent in

advance of its rejection of claim in February 2016, however, is irrelevant to the running of the statute of limitations. See Craver v. Spaugh, 226 N.C. 450, 451-52 (1946). As for the period after its rejection of claim, the record permits an inference only of Goldman Sachs's knowledge of a counterclaim for breach of lease in the Estate Proceeding, which was dismissed on plaintiff's own motion for lack of subject matter jurisdiction. Plaintiff does not allege any facts or proffer any evidence that Goldman Sachs had knowledge that plaintiff would seek to assert a breach of lease claim in a new action prior to filing of the instant action on August 12, 2016.

In any event, the cases cited by plaintiff for excusing running of statute of limitations on the basis of actual notice of a claim are inapposite, because those cases concern the relation back of an amended claim to an original claim in an ongoing case. See, e.g., Cherry v. Perdue Farms, Inc., No. 2:10-CV-23-FL, 2010 WL 5437222, at *3 (E.D.N.C. Dec. 27, 2010) (holding that "the filing date of plaintiff's proposed [amended age discrimination] claim relates back to the date of filing of the original pleading" because of actual notice of the nature of plaintiff's claims); Wallis v. United States, 102 F. Supp. 211, 212 (E.D.N.C. 1952) (holding in Federal Tort Claims Act case that "the addition of the . . . real party to the nominal plaintiff subsequent to the running of the statute of limitations relates back to the commencement of the action and that, therefore, the action is not barred by the statute of limitations").

Plaintiff also asserts that North Carolina Rule of Civil Procedure 12(a)(2) served to extend the time for filing plaintiff's breach of lease claim. That rule provides:

> If it shall be finally determined in the United States courts that the action or proceeding was not removable or was improperly removed, or for other reason should be remanded, and a final order is entered remanding the action or proceeding to the State court, the defendant or defendants, or any other party who would have been permitted or required to file a pleading had the proceedings to remove not been

> instituted, shall have 30 days after the filing in such State court of a certified copy
> of the order of remand to file motions and to answer or otherwise plead.

N.C. R. Civ. P. 12(a)(2). As with the other authorities cited by plaintiff, this rule reflects the unremarkable proposition that plaintiff could have sought to file motions or otherwise plead within 30 days in state court upon remand. It does not include any provision for tolling limitations for filing a new action in state court, much less in federal court.

Finally, plaintiff argues that a portion of his breach of lease claim, regarding the Estate's declaration that it had terminated the lease on February 4, 2016, is subject to a six month statute of limitations under N.C. Gen. Stat. § 28-19-3(b)(1). Whether the statute of limitations runs three months or six months is of no matter to the timeliness of the claim. Even with a six month statute of limitations, the claim filed August 12, 2016, is still eight days out of time. For the reasons set forth above, plaintiff has not demonstrated any basis for suspending or tolling this limitations period. Therefore, this portion of plaintiff's breach of lease claim must be dismissed also as untimely.

In sum, plaintiff's breach of lease claim must be dismissed as a matter of law, pursuant to Federal Rule of Civil Procedure 12(b)(6), as time-barred.

B.     Motion to Excuse Attendance (DE 83)

Plaintiff and defendant Wing do not object to excusing K.L.C.'s attendance at mediation, so long as K.L.C. remains a minor and her sister, Gillian, is present and represents the interests of K.L.C. K.L.C. need not attend the mediation, this court rules, so long as she remains a minor. The court does not require, however, that Gillian physically be present and represent K.L.C.'s interests. As to the former, where the instant motion represents that Gillian will be available by telephone during the mediation, and where her affidavit confirms that she wishes for her parents to act on her behalf at mediation, the court finds good cause to excuse Gillian from physically attending

mediation. As to the latter, the court is satisfied that defendants Louise Falls Cone and Toby Cone will represent the interests of their minor daughter, K.L.C., to ensure completion of any steps necessary for reaching a binding settlement in this matter, where K.L.C. is named in the complaint as appearing "by her next friends and parents, Louise Falls Cone and Toby Cone," (Compl. p. 1), and where K.L.C. and the other Cone defendants have filed a unified answer and are represented by the same counsel. Accordingly, the instant motion to excuse is GRANTED.

C.      Motions to Quash (DE 85, 98)

Hine's motions seek to quash two subpoenas seeking a wide range of files and documents pertaining to Decedent, on the basis of attorney-client privilege and irrelevance. Through subpoena which is the subject of motion filed February 28, 2017, plaintiff sought the following documents from Hine, to be produced February 27, 2017:[3]

> All documents relating to Ralph Falls, Jr. and his children, grandchildren, and Dianne Sellers, including, without limitation, estate planning and tax planning files, premarital agreements, trust, wills, lifetime gifts, charitable gifts, estate and gift tax returns, powers of attorney, health care powers of attorney, billing files, attorney notes, drafts, correspondence (e-mails, letters, etc.); and audio and video recordings.

(DE 85-2). In moving to quash, Hine describes "a large file of correspondence, notes, drafts, documents, and other items" responsive to plaintiff's subpoena that are all subject to asserted attorney-client privilege, as well as many items that are not relevant to the action before the court for which there is "no possible justification revealing these files." (DE 86 at 3). Hine recognizes that a "testamentary exception" applies to the general rule on attorney-client privilege, but asserts that the law is unclear as to whether this exception would apply to an attorney who was terminated

_____

[3] Hine, in negotiation with plaintiff's counsel, was granted extension until February 28, 2017, within which to file this motion.

before final estate documents were drafted, and to documents other than wills. Hine accordingly requests to be relieved of production of all responsive documents under the subpoena. In the alternative, he requests an in camera review of the documents, or appointment of an independent referee to determine which documents are responsive and subject to production.

On March 29, 2017, the court directed Hine to file, ex parte and under seal, a sampling of documents subject to production for the court's in camera review (hereinafter the "Hine documents"). The court requested a sampling comprising 20-25 responsive documents, with descriptive index, representative of the types of documents identified by Hine in his motion: 1) correspondence; 2) notes; 3) drafts; 4) documents; and 5) other items potentially relevant to this action but subject to claim of attorney-client privilege. In addition, the court directed Hine to include 3-5 responsive documents asserted to be irrelevant.

The court has received and reviewed the Hine documents. While decision on Hine's motion remained outstanding, Hine was served with a second subpoena, requesting similar documents. Through that subpoena which is the subject of Hine's motion to quash filed April 19, 2017, defendant Sellers sought the following documents from Hine, to be produced May 15, 2017:

> All notes, documents, audio or video recordings, photographs, tangible things, and communications, including electronically stored information, about or related to Ralph Falls, Jr., including but not limited to communications with: Ralph Falls, III or his attorneys, including but not limited to items regarding or related to powers of attorney; Abigail Falls; Mary Cooper Falls Wing; and Robert Mihaly from January 1, 2010 to the present.

(DE 98-1). Hine notes that his arguments in opposition to defendant Sellers's subpoena substantially are similar to those offered in support of his motion to quash plaintiff's subpoena. Hine states that he "seeks a global resolution from the Court as both subpoenas present the same issues of law and fact." (DE 99 at 2).

Defendant Sellers, in response to the motion to quash, recognizes that the court has been apprised in briefing on the first motion to quash of "relevant authority which demonstrates that any documents requested in [plaintiff's] subpoena, and similar documents requested in Sellers' subpoena, that could be subject to the attorney-client privilege would instead fall under the testamentary exception to the privilege." (DE 101 at 4). Sellers agrees with that position and does not repeat arguments thereon. Sellers argues, in addition, that many of the documents requested by the subpoenas include materials that are not covered by the attorney-client privilege in the first instance because they were communications involving third parties.

Hine has tendered to this court a total of 27 documents. Twenty-three documents are asserted as examples of privileged documents, and four documents asserted as examples of irrelevant documents.[4] The sampled documents comprise 131 pages. The Hine documents bear Bates stamp numbers up through 2021. While the court has reviewed only about 6% of the documents potentially responsive to plaintiff's subpoena, the court finds the sample sufficient. In camera provision of further documents responsive to Sellers's subpoena is unnecessary. Defendant Sellers relies upon several examples of documents received from other sources which she contends are not privileged because of involvement of third parties in the communications. The court has reviewed these also for purposes of its address of both motions. (See DE 101-1 to 101-5).

Issues of relevance, privilege, and testamentary exception are considered in turn below.

    1.    Relevance

Hine contends four documents provided for camera review are examples of the types of documents which are not relevant and should not be subject to production. Upon review, the court

---

[4] The documents are indexed 1-25, Y, and Z.

determines that three of those four documents (Tab. Nos. 24, 25, and Y), are irrelevant and not subject to production. This determination is due primarily to the early date of the documents and due to the fact that the documents do not discuss or concern: 1) Decedent's will; 2) trusts or estate planning documents referencing Decedent's children or grandchildren; or 3) other trusts or estate planning documents referenced in the complaint, including the Qualified Personal Residence Trust, executed in 2002, and Generation Skipping Transfer Trusts, established in 2007. In this limited part, Hine's motions to quash are GRANTED.

By contrast, the fourth document in this category, at tab Z, is relevant, albeit minimally, because it includes discussion at paragraph 11 of a revision to Decedent's will. (Tab. No. Z, Bates Stamp 1467-1469). While the date of the document in 2000 suggests that it will have little relevance to the claims in this matter, the court at this juncture cannot rule it out as entirely irrelevant to the instant matter solely because of its date or the brevity of its discussion of the will. Accordingly, the court includes this document in the discussion of privilege below.

As a guide to Hine for determining relevance of other, similar documents, in light of the allegations in the complaint, as a general rule, all documents described in the subpoenas dated 2008 or later, the alleged date Decedent began a relationship with Sellers, are relevant. As a general rule, documents dated prior to 2008 are not relevant and need not be produced under the subpoenas.[5] Significant exception to this general rule is required, however, for documents predating 2008 that reference or concern 1) Decedent's will; 2) trusts or estate planning documents referencing

---

[5] Sellers's subpoena appears to seek only documents dated January 1, 2010 to the present, thus not encompassing any irrelevant time period. It is possible, however, that the subpoena could be read to impose a date limitation only on documents sought related to communications with Robert Mihaly. (See DE 98-1 at 4). In such instance, the above discussion of relevance applies equally to plaintiff's subpoena and Sellers's subpoena.

Decedent's children or grandchildren; or 3) other trusts or estate planning documents referenced in the complaint, including the Qualified Personal Residence Trust, executed in 2002, and Generation Skipping Transfer Trusts, established in 2007.

2.     Privilege

Under North Carolina law an attorney-client privilege exists if "(1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege." State v. McIntosh, 336 N.C. 517, 523-24 (1994) (quotations omitted). "If it appears by extraneous evidence or from the nature of a transaction or communication that they were not regarded as confidential, or that they were made for the purpose of being conveyed by the attorney to others, they are stripped of the idea of a confidential disclosure and are not privileged." Id. (quotations omitted).

A number of Hine documents, asserted to be privileged, are not privileged because they show on their face that they comprise communications made with or transmitted to third-parties outside of the attorney-client relationship, or they comprise documents made for the purpose of being conveyed by the attorney to others, rather than comprising communications made in confidence in the course of giving legal advice. The following documents, listed by tab numbers ascribed by Hine for the court's inspection, fall into this category for reasons specified below, and these documents and any like them must be produced:

5.  Purchase Agreement (Tab No. 5, Bates Stamp 175-176), because it was executed by a third party;

6.  Executed Last Will and Testament (Tab No. 6, Bates Stamp 363-371), because it was made for purpose of being conveyed to third parties, and it was witnessed and executed by third parties;[6]

7.  Executed Copy of Trust (Tab No. 7, Bates Stamp 373-382), because it was made for purpose of being conveyed to third parties, and was witnessed and executed by third parties;

8.  Executed Copy of Trust (Tab No. 8, Bates Stamp 383-392), because it was made for purpose of being conveyed to third parties, and was witnessed and executed by third parties;

9.  Executed Copy of Trust (Tab No. 9, Bates Stamp 393-402), because it was made for purpose of being conveyed to third parties, and was witnessed and executed by third parties;

11. Letter from TruStar (Tab No. 11, Bates Stamp 594), because it was sent by a third-party;[7]

---

[6] See State v. Locklear, 291 N.C. 598, 603 (1977) (holding that notarization was "for the purpose of enabling the notary, if necessary, to testify as to the authenticity of defendant's signature. Hence, it was not a communication which was regarded as being confidential between attorney and client, and no privilege attached to the notarization").

[7] Although this document includes a non-substantive handwritten note that may have been written by Decedent, the index to the Hine documents references and describes only the underlying letter from TruStar to Decedent.

12.     E-Mail with John Hutson (Tab No. 12, Bates Stamp 979), because it was sent to third-parties;

13.     Memo by John Hine (Tab No. 13, Bates Stamp 981), because it merely memorializes communication between attorney and client in presence of third parties;

19.     Letter to Ralph Falls, III (Tab No. 19, Bates Stamp 1012), because it was sent to third-party;

22.     Letter to John Hine (Tab No. 22, Bates Stamp 1877), because of notary;

23.     Executed Last Will and Testament (Tab No. 23, Bates Stamp 2008-2021), because it was made for purpose of being conveyed to third parties, and it was witnessed and executed by third parties.

Any other, similar documents in Hine's possession, showing on their face that they comprise communications made with or transmitted to third-parties outside of the attorney-client relationship, or documents made for the purpose of being conveyed by the attorney to others, rather than comprising communications made in confidence in the course of giving legal advice, are not privileged and must be produced.

In sum, Hine documents at tab numbers 5-9, 11-13, 19, and 22-23, are not privileged and must be produced. Any other documents meeting similar criteria also must be produced. The remaining Hine documents are privileged, but subject to production under the testamentary exception to privilege, as discussed below.

3.     Testamentary Exception

The testamentary exception to attorney-client privilege is well-established:

[I]t is generally considered that the rule of privilege does not apply in litigation, after the client's death, between parties, all of whom claim under the client; and so, where

the controversy is to determine who shall take by succession the property of a deceased person and both parties claim under him, neither can set up a claim of privilege against the other as regards the communications of deceased with his attorney.

In re Kemp's Will, 236 N.C. 680, 684 (1953) (quoting C.J. Witnesses § 587); see C.J. Witnesses § 587 (same) (citing Glover v. Patten, 165 U.S. 394 (1897)). "[I]n a suit between devisees under a will, statements made by the deceased to counsel respecting the execution of the will, or other similar document, are not privileged." Glover, 165 U.S. at 406. "[T]he general rule with respect to confidential communications . . . is that such communications are privileged during the testator's lifetime and, also, after the testator's death unless sought to be disclosed in litigation between the testator's heirs." Swidler & Berlin v. United States, 524 U.S. 399, 405 (1998) (quotations omitted).

All the conditions for the testamentary exception are satisfied here. First, this litigation is ongoing after the client's (Decedent's) death, between parties "all of whom claim under the client." In re Kemp's Will, 236 N.C. at 684. Second, "the controversy is to determine who shall take by succession the property of Decedent," and all parties "claim under him." Id. Accordingly, neither can set up a claim of privilege against the other as regards the communications of Decedent with Hine.

Hine raises two issues in his motions that he contends may bar application of the testamentary exception here, which the court will take up in turn. First, Hine asserts, "[i]t is unclear how the testamentary exception would apply to an attorney who was terminated and did not draft the final dispositive estate planning documents," and that Hine "was not the attorney that drafted the ultimate dispositive estate plan for the Decedent at issue before this Court." (DE 86 at 4). As an initial matter, Hine's assertion presumes too much of the facts, where one of the disputed issues in this case is which document or documents are the final dispositive estate planning documents.

Contrary to Hine's presumption, plaintiff alleges that Decedent "executed a last will and testament prepared by Hine" in 2010 "that made clear his intentions that Sellers was not to be a beneficiary of his estate," and that Sellers caused Decedent to "transfer tens of millions of dollars to Sellers or for her benefit that Decedent had always intended to devise to Falls III and his other children." (See Compl. ¶ 20, 45).

In addition, case law describing and applying the testamentary exception does not limit the rule to disclosure of communications only with the attorney who drafted the latest purported will or other estate planning document. The rule applies, instead, more broadly to "litigation, after the client's death, between parties, all of whom <u>claim under the client</u>." <u>In re Kemp's Will</u>, 236 N.C. at 684 (emphasis added). "[T]he privilege . . . belongs equally to parties claiming under the client as against parties claiming adversely to him." <u>Glover</u>, 165 U.S. at 407 (quotations omitted). The rule is limited only in that it must apply to a contest between "heirs or next of kin," rather than "third persons to establish claims against an estate." <u>Id.</u> at 406. Thus, the testamentary exception reasonably encompasses circumstances, as here, where the parties to litigation lay claim to a portion of Decedent's assets on the basis of wills or other similar estate documents executed by Decedent.

Hine asserts that it is "unclear whether the testamentary exception extends to contests over drafting a trust and other related documents," contending that <u>Glover</u>, <u>Swidler</u>, and <u>In re Will of Kemp</u> "all center on caveat actions or claims to set aside a will." (DE 86 at 5). Again, the premise of Hine's argument is overstated. Notably, the document under dispute in <u>Glover</u> was not a will, but rather a settlement agreement that created a trust:

> a trust existed on the part of the said testatrix towards the complainants and the said defendant in respect of their said estate; and that the relation of said testatrix to the complainants and the said defendant was recognized and treated by her to the day of her death as that of trustee and cestuis que trustent, and not of debtor and creditors.

Glover, 165 U.S. at 399. The claims centered on tension between that trust document, which was drafted by an attorney whose communications with decedent were sought to be disclosed, and a will, drafting of which was not discussed. See id. at 406-07 & 411-12.

> The theory of the appellants is that the relation of the testatrix to her children was that of trustee, and not of debtor, and that the will, by reason of its provisions, operated the extinguishment, discharge, and payment of the complainants' claims, and that said claims ceased to be provable as debts against the estate.

Id. at 401. In this respect, Glover is similar to the instant matter on the privilege issue raised, in that the testamentary exception is applied not only to communications regarding drafting of a will, but also trust documents.

Next, Swidler has nothing to do with interpretation of a will, but merely restates the rule of the testamentary exception, as set forth herein. See Swidler, 524 U.S. at 405. Finally, although In re Will of Kemp involves interpretation of a will, the court therein does not purport to limit the testamentary exception more narrowly than as recognized in the common law. Indeed, in stating the rule of the testamentary exception, the court quotes a single treatise as its source for the quoted rule, "C.J. Witnesses." In re Kemp's Will, 236 N.C. at 684. That treatise, in turn cites a number of different cases as standing for the quoted rule, including, first, Glover, which, as described above, applied the rule to communications with an attorney concerning a trust document. See C.J. Witnesses § 587. Then, the treatise describes several cases involving application of the testamentary exception to "a deed," or "deeds . . . placed in escrow," or "[t]ransfer inter vivos," not solely wills. Id. As such, In re Kemp's Will does not suggest need to limit application of the testamentary exception only to wills, but rather allows for the exception to apply to other similar documents pertinent to disposition of assets upon a client's death, as at issue in the instant matter.

In sum, the testamentary exception applies in this case to permit disclosure to the parties privileged communications between Decedent and Hine concerning wills and other estate documents relevant in this matter.[8]  Accordingly, Hine must produce the Hine documents listed below by tab numbers ascribed by Hine for purposes of the court's inspection, and all similar documents:

1.  Fax to John Hine (Tab No. 1, Bates Stamp 44-45);

2.  Mary Elaine Falls Trust (draft) (Tab No. 2, Bates Stamp 61-73);

3.  Letter to Ralph Falls (Tab No. 3, Bates Stamp 75-76);

4.  Limited Partnership Agreement (draft) (Tab No. 4, Bates Stamp 155-174)

10.  Fax to John Hine (Tab No. 10, Bates Stamp 585);

14.  Letter to Ralph Falls (Tab No. 14, Bates Stamp 985);

15.  Memo by John Hine (Tab No. 15, Bates Stamp 989);

16.  Memo by John Hine (Tab No. 16, Bates Stamp 990);

17.  Letter to Ralph Falls (Tab No. 17, Bates Stamp 998-1000);

18.  Memo by John Hine (Tab No. 18, Bates Stamp 1009-1011);

20.  Letter to Ralph Falls and Homer Duncan (Tab No. 20, Bates Stamp 1031-1035);[9]

---

[8]  Because the privilege does not apply, the court rejects Hine's additional argument that he has an ethical obligation to maintain confidentiality regarding the materials subject to production.  See N.C. Rules of Prof'l Conduct. R. 1.6(b)(1) (specifying that attorney may reveal otherwise confidential information where necessary to comply with the law or court order).

[9]  Unlike other Hine documents involving communications with third parties, the letter to Ralph Falls and Homer Duncan is privileged, but forth the testamentary exception, due to the nature of the communication in the letter and Duncan's role as Decedent's accountant, included on the face of the communication for purposes of facilitating legal advice.  See Grand Jury Proceedings Under Seal v. United States, 947 F.2d 1188, 1191 (4th Cir. 1991) (upholding application of privilege where "the communications privileged from disclosure were made for the purpose of the accountant assisting appellant in the rendition of legal services rather than merely for the purpose of receiving accounting advice").

21.     Memo by John Hine (Tab 21, Bates Stamp 1047-1048);

Z.      Memo by John Hine (Tab Z, Bates Stamp 1467-1469).

Thus, for the reasons given, Hine's motions to quash are DENIED in large part.  With exception of documents tabbed at numbers 24 and 25, and at Y, and any similar documents, Hine must produce in response to the subpoenas all documents tendered to the court (utilizing the same Bates numbers in production for unity of record), and like documents on or before **May 15, 2017.**

## CONCLUSION

In summary, as set forth in more detail herein, the court orders as follows:

1.      Defendant Goldman Sachs's motion to dismiss (DE 36) is GRANTED, and plaintiff's claim for breach of lease is DISMISSED as time-barred.

2.      The motion to excuse (DE 83) is GRANTED, on the terms set forth herein.  Specifically, K.L.C. need not attend, so long as she remains a minor.  Gillian need not physically attend, where she will be in attendance via telephone.  In addition, Gillian need not represent K.L.C.'s interests at mediation.

4.      Hine's motions to quash subpoenas (DE 85, 98) are GRANTED IN PART and DENIED IN PART, as set forth herein, and Hine is DIRECTED to produce documents under the subpoenas in accordance with the terms set forth herein, on or before **May 15, 2017.**

5.      The materials provided by Hine for in camera review will be delivered to the clerk's office for filing under seal in accordance with Rule V(G)(3) of the United States District Court for the Eastern District of North Carolina's Electronic Case Filing Administrative Policies and Procedures Manual (Rev. March 2017).

SO ORDERED, this the 1st day of May, 2017.

LOUISE W. FLANAGAN
United States District Judge