IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:16-cv-00740

| | |
|---|---|
| RALPH L. FALLS III,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>GOLDMAN SACHS TRUST COMPANY, N.A., as Executor of the Estate of RALPH L. FALLS, JR., GOLDMAN SACHS TRUST COMPANY, N.A., as Trustee of the RALPH LANE FALLS REVOCABLE DECLARATION OF TRUST, DIANNE C. SELLERS, LOUISE FALLS CONE, individually and on behalf of her minor children and unborn issue, TOBY CONE, MARY COOPER FALLS WING, individually and on behalf of her minor children and unborn issue, GILLIAN FALLS CONE, individually and on behalf of her minor children and unborn issue, and K.L.C., by her next friends and parents, Louise Falls Cone and Toby Cone,<br><br>　　　　　　　　Defendants. | **PLAINTIFF'S REPLY TO THE CONE DEFENDANTS IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |

Pursuant to Local Rule 7.1(g)(1), Plaintiff Ralph L. Falls III ("Falls III") respectfully submits this reply to the response of the Cone Defendants (D.E. 157) in further support of Plaintiff's Motion for Leave to File Amended Complaint ("Motion to Amend") (D.E. 125).

**I.　FALL III DID NOT UNDULY DELAY IN BRINGING THIS MOTION.**

　　**A.　The Cone Defendants Attempt to Manufacture Their Own Concept of "Undue" Delay Where None Exists.**

Falls III detailed in his opening brief the reasons why he moved to amend his complaint at this still-early stage of the case. In response, the Cone Defendants offer no valid reason or

authority to support their position that Falls III's purported "delay" in bringing this motion amounted to an *undue* delay that would warrant denying this motion. This is not surprising, given that Falls III has sought leave to amend—for this first time in this case—before the Court has even set a deadline for the parties to amend their pleadings and before full discovery has even started. In fact, Falls III brought this Motion to Amend prior to the July 15, 2017 deadline to amend pleadings that was originally suggested by the parties in their initial Rule 26(f) Report. (D.E. 68 at 7.)[1] The Cone Defendants' subjective belief that Falls III "unreasonably delayed" is insufficient to deny this motion. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) ("Delay alone is an insufficient reason to deny leave to amend. . . . Rather, the delay must be accompanied by prejudice, bad faith, or futility."); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("But mere passage of time need not result in refusal of leave to amend; on the contrary, it is only *undue* delay that forecloses amendment. Amendment can be appropriate as late as trial or even after trial.") (citing 6 C. Wright & A. Miller, Federal Practice and Procedure § 1488 (1971); Fed. R. Civ. P. 15(b)) (emphasis added).

  **B.** **Falls III Filed the State Court Actions To Preserve His Rights and in Response to Information Revealed Through Limited Discovery.**

The Cone Defendants cite Falls III's filing of two state court actions during limited discovery as indicative of his "undue delay" in bringing this motion. But Falls III brought the state court actions for two reasons that unquestionably were legitimate: (1) the statute of limitations was set to expire with respect to his claims in both actions; and (2) Falls III learned—through discovery being conducted in this case—that the Cone Defendants had improperly

---

[1] The Court entered the Joint Consent Order governing limited discovery in lieu of a conventional case management order. (*See* D.E. 75.)

modified and taken extensive distributions from an irrevocable trust (the "2007 Trust") under which Falls III was a beneficiary.

First, Falls III brought suit in Wake County, Case No. 17 CVS 3283 (the "Bode Removal case"), for the legitimate purpose of preserving his rights when the statute of limitations was imminently set to expire. In the Bode Removal case, Falls III seeks to remove John T. Bode ("Bode")—who facilitated the improper modification of the 2007 Trust described below—as Trustee of the 2007 Trust and two other GST trusts set up by Falls Jr. for the benefit of his children. Bode was designated by Falls Jr. to replace Falls III as Trustee of the three trusts on March 17, 2014, at a time when Falls Jr. was incapacitated and the subject of undue influence. Thus, when Falls III filed the Bode Removal case, on March 16, 2017, he did so on the eve of the expiration of the three-year statute of limitations. *See* N.C. Gen. Stat. § 1-52.

Second, Falls III filed Case No. 17 CVS 3947 (the "GST case"), also in Wake County, after learning through a subpoena issued to Bode during limited discovery in this case that the Cone Defendants had modified the irrevocable 2007 Trust—under which Falls III was a beneficiary—to provide extensive distributions to Louise Falls Cone and to add Toby Cone as a beneficiary. As detailed in Falls III's complaint in GST case, the modification of the 2007 Trust (attached hereto as Exhibit A) was improper for a number of reasons, including:

- The modification was made without the consent of all beneficiaries of the 2007 Trust, in violation of North Carolina law. *See* N.C. Gen. Stat. § 36C-4-411(a).

- Falls Jr. was one of the parties who "consented" to the modification, even though the 2007 Trust expressly prohibited Falls Jr. from modifying the 2007 Trust, and even though Falls Jr. lacked capacity at the time of the modification.

- Louise Falls Cone had her children, Gillian and K.L.C., sign and "consent" to the modification of the 2007 Trust on their own behalf, without appointing a *guardian ad litem* to represent their interests, despite the fact that their interests were in conflict

with her own interest under the 2007 Trust and the fact that both Gillian and K.L.C. were minors at the time that they "consented" to the modification.

Moreover, the conduct underlying that suit—i.e., the improper modification of the 2007 Trust—occurred in June 2014. It was therefore imperative that Falls III bring suit immediately to preserve his rights under the three-year statute of limitations. *See* N.C. Gen. Stat. § 1-52.

Furthermore, after filing the GST case and the Bode Removal case, Falls III agreed to a temporary restraining order ("TRO") and stay of both cases pending the resolution of this case. Had Falls III, in fact, intended the state court actions as a "distraction"—as the Cone Defendants contend—he never would have agreed to the TRO or the stay. But since Falls III sought merely to preserve his rights, he agreed to stay both cases so that the parties could continue focusing their efforts on this case.

Accordingly, the state court cases were filed for the legitimate purpose of preserving Falls III's rights, and are in no way indicative of any delay—much less undue delay—by Falls III in seeking leave to amend his complaint.

### C.      Falls III Could Not Have Known That He Was Excluded Under Other Trust Amendments Based on the Redacted Documents He Received in 2016.

The Cone Defendants speculate that Falls III was "on notice" in 2016 that he was excluded under other Trust amendments based on his receipt of two pages of a redacted copy of the Fourth Amendment from Goldman Sachs. According to the Cone Defendants, Falls III should have known based on his prior receipt of a redacted copy of the Fifth Amendment—under which Falls III was excluded—that his receipt of the redacted Fourth Amendment meant that he was excluded under that document as well. This theory ignores the fact that when Falls III received the incomplete, redacted copy of the Fourth Amendment from Goldman Sachs, he also received from Goldman Sachs an incomplete, redacted copy of the Revocable Trust—under

which Falls III *was* a beneficiary. Thus, Falls III could not have logically deduced that he had been excluded under the Fourth Amendment based on his receipt of a redacted copy (since he also received a redacted copy of the Revocable Trust), or based on his receipt of an incomplete copy (since he also received an incomplete copy of the Revocable Trust).

Furthermore, Falls III could not possibly have discerned whether he had been included or excluded under the Fourth Amendment based on the two redacted pages that he received from Goldman Sachs (attached hereto as Exhibit B). In fact, the redacted two-page snippet he received showed only one paragraph of the Trust's "Administrative Provisions," and did not disclose any of the Trust beneficiaries. He also could not discern the extent to which he was a beneficiary under the Revocable Trust based on the version he received from Goldman Sachs (attached hereto as Exhibit C)—he could infer only that he was a beneficiary based on an unredacted reference to his "share" under the Trust.

## II. THE CONE DEFENDANTS' "BAD FAITH" ARGUMENT IS AN IMPROPER ATTEMPT TO ARGUE THE MERITS OF THIS CASE.

The primary contention advanced by the Cone Defendants in their brief is a purported "bad faith" argument that has nothing to do with bad faith for purposes of addressing a motion to amend. (*See* D.E. 157 at 12-19.) An amendment is brought in bad faith where it is "abusive or made in order to secure some ulterior tactical advantage." *GSS Props., Inc. v. Kendale Shopping Ctr., Inc.*, 119 F.R.D. 379, 381 (M.D.N.C. 1988). A court may find bad faith, for example, where a plaintiff "withhold[s] facts clearly known to it prior to the filing of the complaint and then mov[es] to amend the complaint where the evidence suggests that plaintiff had an ulterior purpose of either attempting to force defendant to settle or punishing defendant for failing to settle," *id.*, or where the amendment "is brought merely for the purpose of circumventing a

dispositive motion," *Costello v. Univ. of N.C. at Greensboro*, 394 F. Supp. 2d 752, 758 (M.D.N.C. 2005) (citing *Sandcrest Outpatient Servs., P.A. v. Cumberland Cnty. Hosp. Sys., Inc.*, 853 F.2d 1139, 1149 (4th Cir. 1998)).

Here, instead of pointing to any ulterior purpose, the Cone Defendants resort to a full-fledged evidentiary argument, on the ultimate issues and merits of the case, based on their view of the (incomplete) evidence that has been gathered through limited discovery so far in this case. (*See* D.E. 157 at 13 ("Plaintiff's new allegations fly in the face of the evidence and are, therefore, made in bad faith.").) This evidence-based argument—which appears to be an improper attempt to convert this Motion to Amend into a dispositive motion—is irrelevant to this motion, where it is the sufficiency of the *allegations* in Falls III's proposed amended complaint, not the evidence, that is at issue. Indeed, as one federal court has observed:

> An argument that is simply an attack on the factual validity of the Plaintiffs' claims is irrelevant to the Court's motion to amend analysis. As in a motion to dismiss, in considering a motion to amend, the Court must accept all of the Plaintiffs' proposed factual allegations as true. Thus, the Defendants refutation of the facts, based on inadmissible extrinsic evidence, do not provide a basis for denying the motion to amend.

*Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 80 (E.D.N.Y. 2011). Accordingly, the Cone Defendants' misplaced, premature contention should be rejected, if not stricken, in its entirety.

Moreover, while an evidentiary analysis in and of itself – including weighing evidence to make an ultimate determination on the merits of the case – is clearly improper at this stage, the Cone Defendants exacerbate the issue by presenting only cherry-picked evidence carefully selected to support their position. While Falls III contends that any evidentiary analysis is improper on this Motion, Falls III assures the Court that the evidentiary picture is not nearly so tilted as defendants suggest and there is a plethora of evidence supporting Falls III's position that

this Court will be free to consider at the appropriate time (summary judgment or trial) when the parties have been allowed to complete discovery. By way of illustrative examples only, this evidence includes:

- Falls Jr. is "hospitalized on the inpatient psychiatric ward after being transferred recently from Wake Med." (Ex. D, Trustee-Medical-DUKE-01538, 11/17/12.)

- "Due to impulsivity, Mr. Falls is permitted only one 5 minute phone call a shift; the call must be supervised by staff. Please notify me right away by pager if he threatens to sue people or attempts to make financial transactions." (Ex. E, Trustee-Medical-DUKE-01625, 11/21/2012.)

- "At 1am [Falls Jr.] was found to be talking strangely, stating he was in the middle east." (Ex. F, Trustee-Medical-DUKE-01805, 10/6/13.)

- Falls Jr.'s brain scan "shows a large recurrence of tumor that was not there a year ago. What is worrisome to me is it is in the inferior frontal area. I wonder where his language function is." (Ex. G, Trustee-Medical-DUKE-03502, 10/22/13.)

- Falls Jr. is "[n]ot oriented to place or time, some notable word find difficulty" and "worsening neurologic symptoms." (Ex. H, CONFIDENTIAL SELLERS_002691, 10/28/13.)

- Falls Jr. "remains confused thinks it is 2001 . . . ." (Ex. I, CONFIDENTIAL SELLERS_002714, 10/29/13.)

- Falls Jr. is "still confused and blurts out random phrases." (Ex. J, CONFIDENTIAL SELLERS_002812, 11/4/13.)

- Falls Jr.'s "Overall Cognitive Status" is "Impaired/altered mental status"; he is "[c]onfused (disconnected train of thought, unable to finish sentences)" and his communication is "nonsensical." (Ex. K, Trustee-Medical-DUKE-04104, 12/3/13.)

- "My father continues to be very ill and his functioning is compromised in every sense of the word." (Ex. L, CONE-001110, Louise Falls Cone email to Brodie Burwell, 12/3/13.)

- Falls Jr. is "[u]nable to give me wife's name" and "keeps saying '12' when asking what objects are (such as watch, pictures on stroke cards)." (Ex. M, Trustee-Medical-DUKE-03989, 12/7/13.)

- "When I saw him, he was medically in very poor shape…. While I had initially planned to operate on Mr. Falls, it seems to me that an operation at the present time would be extraordinarily risky and very dangerous. I have talked to them about radiation therapy for Ralph's rapidly recurrent meningioma." (Ex. N, Trustee-Medical-Dr Anderton-0080, Dr. Allan Friedman letter to Dr. Richard Weisler, 1/6/14.)

- A brain scan reveals that Falls Jr.'s tumor had been re-growing rapidly throughout 2014: "Overall the lesion has significantly increased in size; the subfrontal portion of the lesion has enlarged in the interval and now measures 3.6 x 5.4 x. 3.6 cm." (Ex. O, Trustee-Medical-DUKE-04793, 10/24/14.)

- Falls Jr. undergoes a "secondary craniotomy for resection of aggressive meningioma and 4 centimeter cranioplasty." (Ex. P, Trustee-Medical-DUKE-05531, 12/26/14.)

- "Dr. Friedman said he was able to remove the tumor affecting Mr. Fall's speech and thought process." (Ex. Q, CONFIDENTIAL SELLERS_006425, Nancy Ledford email to Dianne Sellers, 12/27/14.)

- "The confusion he is experiencing is troubling, to say the least." (Ex. R, CONE-001934, Nancy Ledford email to Dianne Sellers, 1/3/15.)

Furthermore, much more evidence highly favorable to Falls III has been gleaned in counsel interviews to date of multiple fact witnesses, none of whom Falls III has yet had the opportunity to depose because the initial limited discovery ordered by the Court covered only document discovery. Defendants' invitation to this Court to make what is essentially a summary judgment decision when not a single deposition has yet been taken further illustrates how ill-guided such an invitation is. There is no merit to the Cone Defendants' summary judgment argument shoehorned under a "bad faith" banner on a motion to amend the pleadings.[2]

---

[2] Also lacking merit is the Cone Defendants' contention that Louise Falls Cone did not "emerge" as a primary beneficiary under the Fifth Amendment. (D.E. 157 at 15.) The Cone Defendants improved from 10% beneficiaries under the Revocable Trust to 75% beneficiaries under the Fifth Amendment. Even comparing only the Cone Defendants' share under the First Amendment (which the Cone Defendants selectively cite to support their contention) to their share under the Fifth Amendment (which the Cone Defendants ignore), the Cone Defendants vastly improved from 50% beneficiaries to 75% beneficiaries under the Revocable Trust.

### III. FALLS III DID NOT KNOW THAT HIS CHILDREN HAD BEEN DISINHERITED AT THE TIME HE FILED HIS COMPLAINT.

The Cone Defendants incorrectly assume that Falls III "had all the information he needed [to] assert claims on behalf of his minor children" when he filed his original complaint. (D.E. 157 at 19-20.) This is not true. At the time Falls III filed his complaint, he had seen only the Fifth Amendment, which did not name his children as beneficiaries, a snippet of the Fourth Amendment that did not reveal beneficiaries, and a redacted version of the Revocable Trust that did not disclose the schedule of the Trust beneficiaries. While Falls III knew that *he* had been named a beneficiary based on an unredacted reference to his "share" in the redacted copy of the Revocable Trust that he received from Goldman Sachs, he did not know that *his children* also had been named as Trust beneficiaries. Since Falls III did not know at the time he filed his complaint that his children had ever been named as Trust beneficiaries, he obviously could not have known that his children had ever been disinherited under the Trust amendments. Indeed, Falls III learned for the first time in January 2017 that his children had been named—and subsequently disinherited—as beneficiaries under the Revocable Trust.

The Cone Defendants contend that Falls III is acting in "bad faith" by adding his children as parties after mediation, since Falls III had opposed the Cone Defendants' motion to excuse Gillian's and K.L.C.'s attendance at mediation. (D.E. 157 at 20.) The obvious and material difference between Falls III's children and Gillian and K.L.C., however, is that Gillian and K.L.C. are old enough to have personal knowledge of the facts and circumstances underlying Falls III's claims; in contrast, Falls III's oldest child was only ten years old at the time of mediation, and his youngest only two. In addition, Falls III requested only that Gillian—who is an adult—be required to attend mediation, and that K.L.C. participate by telephone.

Furthermore, with respect to J.B.F., it is true that he was never named a beneficiary under the Revocable Trust or any of its amendments. However, J.B.F. was not born until 2014, and the reasons for his exclusion under the later Trust amendments—undue influence and lack of capacity—are exactly what Falls III intends to prove at trial. Falls Jr. had a history of providing for all of his grandchildren, beginning with his 2012 Will, in which he provided a class gift to his grandchildren, and extending through the First Restatement executed January 27, 2014, which designated each of his then-living grandchildren as a 15% Trust beneficiary. Had Falls Jr. been acting of his own free will and without the undue influence, he would have provided for all of his grandchildren, including J.B.F., just as he had always done.[3]

Finally, the Cone Defendants do not even attempt to argue that they would be prejudiced by the addition of Falls III's children as parties. *See Fed. Deposit Ins. Corp. v. Kerr*, 650 F. Supp. 1356, 1362 (W.D.N.C. 1986) (describing prejudice as the "most important" factor in addressing a motion to amend).

## **CONCLUSION**

For the foregoing reasons, and for all of the reasons stated in Falls III's opening brief and his reply briefing with respect to the responses submitted by Defendants Goldman Sachs and Dianne C. Sellers, Falls III respectfully requests that his Motion to Amend be granted.

---

[3] Similarly, although Falls Jr. originally had omitted Louise Falls Cone as a beneficiary under the Revocable Trust, he nevertheless included her children as Trust beneficiaries. Falls Jr.'s anger toward Louise, in other words, did not affect the status of her children as beneficiaries. Thus, even if Falls Jr. had been angry toward Falls III, he would have had no reason to disinherit Falls III's children—or, in J.B.F.'s case, he still would have included J.B.F. as a beneficiary.

This the 20th day of November, 2017.

>	/s/ Matthew W. Krueger-Andes
>	Lynn F. Chandler
>	N.C. State Bar No. 23378
>	Jonathan P. Heyl
>	N.C. State Bar No. 25559
>	Matthew W. Krueger-Andes
>	N.C. State Bar No. 42984
>	SMITH MOORE LEATHERWOOD LLP
>	101 North Tryon Street
>	Suite 1300
>	Charlotte, North Carolina 28246
>	Telephone:  (704) 384-2600
>	Facsimile:  (704) 384-2800
>	E-mail: lynn.chandler@smithmoorelaw.com
>	         jon.heyl @smithmoorelaw.com
>	         matt.krueger-andes@smithmoorelaw.com
>
>	*Attorneys for Ralph L. Falls III*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 20th day of November, 2017.

/s/ Matthew W. Krueger-Andes
Matthew W. Krueger-Andes
