IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-740-FL

| | | |
|---|---|---|
| RALPH L. FALLS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GOLDMAN SACHS TRUST | ) | |
| COMPANY, N.A. as Executor of the | ) | |
| Estate of Ralph L. Falls, Jr.; GOLDMAN | ) | |
| SACHS TRUST COMPANY, N.A. | ) | |
| as Trustee of the Ralph Lane Falls | ) | |
| Revocable Declaration of Trust; DIANE | ) | |
| C. SELLERS; LOUISE FALLS CONE | ) | |
| individually and on behalf of her minor | ) | |
| children and unborn issue; TOBY CONE; | ) | |
| MARY COOPER FALLS WING | ) | |
| individually and on behalf of her minor | ) | |
| children and unborn issue; GILLIAN | ) | |
| FALLS CONE individually and on behalf | ) | |
| of her minor children and unborn issue; | ) | |
| K.L.C. by her next friends and parents, | ) | |
| Louise Falls Cone and Toby Cone, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon the following motions: 1) joint motion to compel discovery by plaintiff Ralph L. Falls, III (plaintiff or "Falls III") and defendant Mary Cooper Falls Wing ("Wing") (DE 104); 2) motion for partial judgment on the pleadings by defendant Dianne C. Sellers ("Sellers") (DE 106); 3) plaintiff's motion for leave to file amended complaint (DE 125); and 4) defendant Sellers's motion to dismiss defendant Wing's crossclaims for annulment (DE 166). Following multiple extensions of time to allow the parties to complete settlement activities, briefing now has concluded and the issues raised are ripe for ruling. For the following reasons, the court

grants plaintiff's motion to amend, denies as moot the motion for judgment on pleadings and the motion to compel, and grants the motion to dismiss.

## STATEMENT OF THE CASE

Plaintiff commenced this action on August 12, 2016, asserting the following claims: 1) claim seeking declaration that a certain Fifth Amendment to Revocable Declaration of Trust of Ralph L. Falls, Jr., purportedly executed by plaintiff's father, Ralph L. Falls, Jr., ("Decedent"), before his death, is invalid; 2) tort claim of malicious interference with the right to inherit, asserted against defendant Sellers; 3) breach of lease claim against the Estate of Ralph L. Falls, Jr. (the "Estate"); 4) alternative claim seeking declaration regarding the enforcement of a lease provision in the Fifth Amendment to Revocable Declaration of Trust of Ralph L. Falls, Jr.   Plaintiff seeks declaratory relief and damages, as well as costs and attorney's fees.

In November 2016, defendant Goldman Sachs Trust Company, N.A. ("Goldman Sachs") answered and filed a motion to dismiss plaintiff's third claim for breach of lease. Defendant Sellers answered and asserted a counterclaim for declaratory judgment that plaintiff is not entitled to attorney's fees.  Defendants Louise Falls Cone ("Cone"); Toby Cone; Gillian Falls Cone; and K.L.C. by her next friends and parents, Louise Falls Cone and Toby Cone (collectively, the "Cone defendants"), filed an answer and amended answer, including counterclaim for declaratory judgment that plaintiff is not entitled to attorney's fees.

Defendant Wing filed an answer containing admissions and allegations generally aligned with the allegations in the complaint, along with the following crossclaims asserted against the other defendants:

1)      Declaratory judgment that a certain "Revocable Trust or its amendments" are invalid, due to lack of capacity and improper influence;

2)      Annulment of marriage between Decedent and defendant Sellers due to lack of capacity and improper influence;

3)      Alternative declaratory judgment that the purported marriage and the "Revocable Trust or its amendments" are invalid due to lack of capacity and improper influence.

(Answer and crossclaims (DE 49) at 14-18).

On December 20, 2016, the court entered an order addressing both the instant case and a second case involving two of the same parties, Goldman Sachs Trust Company, N.A., as Executor of the Estate of Ralph L. Falls, Jr. v. Ralph L. Falls, III, No. 5:14-CV-777-FL (E.D.N.C.), concerning an alleged loan by Decedent to Falls III (hereinafter the "Loan Case"). In such order the court severed a counterclaim by Falls III for breach of fiduciary duty related to the lease provision in the Fifth Amendment to Revocable Declaration of Trust of Ralph L. Falls, Jr., and consolidated that counterclaim into the instant case. The court noticed a Rule 16(b) scheduling conference in the instant case to be held concurrently with pre-trial conference in the Loan Case, anticipating consideration of "settlement mechanism(s) which may lead to a global resolution of the issues raised in these cases." (Order (DE 62) at 3).

At hearing on January 3, 2017, the court stayed all trial activities in the Loan Case pending a limited initial period of discovery in aid of global settlement in both cases. "[T]o allow for potential settlement resolution, in lieu of entering a case management order at [that] time, the court [directed] the parties in the [instant] case to file a joint proposed consent order regarding scheduling." (Order (DE 70) at 4). In consent order entered January 17, 2017, the court noted that

the parties exchanged initial disclosures on January 11, 2017, and that they would engage in an initial period of limited discovery in the instant case to conclude May 26, 2017, with mediation contemplated for June 2017. The court noted availability of court to hold a teleconference following close of initial period of discovery, prior to mediation, upon request of the parties. The court concluded by noting: "Should settlement efforts prove unsuccessful following a mediation or other court-hosted settlement conference, this Court shall enter a complete case management scheduling order that shall govern with respect to all remaining activity in this case through dispositive motions." (Order (DE 75) at 4).

During the initial period of limited discovery in aid of settlement, on May 1, 2017, the court granted in part and denied in part a motion to quash subpoena filed by attorney John C. Hine ("Hine"). In the same order the court granted Goldman Sachs's motion to dismiss plaintiff's breach of lease claim as time-barred.

On May 26, 2017, plaintiff and defendant Wing filed the instant motion to compel discovery seeking 1) an accounting of all estate and trust activity and 2) documents evidencing communications between Goldman Sachs and the other defendants, withheld on the basis of a purported common interest privilege.

On June 2, 2017, defendant Sellers filed the instant motion for partial judgment on the pleadings, seeking judgment in her favor on plaintiff's first claim for declaratory judgment, on the basis that the claim does not present an actual controversy because plaintiff does not seek to declare either a certain "Fourth Amendment" or "Third Amendment" also invalid. (Motion (DE 106) at 3).

On June 23, 2017, plaintiff filed the instant motion for leave to amend complaint, accompanied by a proposed amended complaint, a redline comparison, and the same exhibits that accompanied the original complaint. In the proposed amended complaint, plaintiff seeks to expand his first claim to assert that "all amendments" to the "Ralph Lane Falls Revocable Declaration of Trust" "executed after August 2011 that disinherit Falls III and Falls III's minor children are invalid." (Prop. Am. Compl. ¶ 86). Plaintiff seeks to expand his second claim to include allegations against the Cone defendants, and he seeks to expand his fourth claim to include allegations regarding the "Fourth Amendment." (Id. ¶ 114). Plaintiff restates his third claim for breach of lease "to preserve his appeal rights." (Id. ¶ 111 n.1). Plaintiff also seeks to add his minor children, M.E.F., L.C.F., and J.B.F., as plaintiffs, as well as add factual allegations against the Cone defendants and in other respects as set forth in more detail herein.

In the meantime, while the above-described motions were ripening, the parties filed multiple status reports and motions for extensions of time regarding the parties' ongoing settlement efforts, and the court entered extension orders, including the following:

1) On June 13, 2017, the parties filed a First Status Report and consent request for temporary stay, noting ongoing mediation, such that "filing and response deadlines are suspended and the Court will not rule on any pending matter, including discovery matters," until June 19, 2017. (DE 121).

2) On June 19, 2017, the parties filed a Second Status Report and request for amendment of deadlines, noting ongoing mediation, and, noting the parties "are not in agreement on a proposed approach for pending matters." (DE 124 at 3). Plaintiff noted, however, with respect to the motion to compel, "in the event that the Court were to grant the Motion to

Compel, Plaintiff and Ms. Wing agree to suspend compliance by Defendant Goldman Sachs so long as the Early Mediation process is proceeding productively." (Id.). Plaintiff requested until June 29, 2017, to file a response to the motion for judgment on pleadings, which the court allowed by order entered June 26, 2017.

3) On July 3, 2017, the parties filed a <u>Third Status Report</u>, noting ongoing mediation, and requesting extensions for briefing on the motion for judgment on pleadings and motion to to amend, which the court allowed by order entered July 5, 2017.

4) On July 24, 2017, the parties filed a <u>Fourth Status Report</u>, noting ongoing mediation and proposal made by plaintiff and defendant Wing that the Cone defendants and defendant Sellers had taken under advisement.

5) On August 7, 2017, the parties filed a <u>Fifth Status Report</u>, noting ongoing mediation, and requesting additional briefing extensions to "allow the parties to remain focused on their settlement discussions," (DE 142 at 2), which the court allowed on August 22, 2017.

6) On August 21, 2017, the parties filed a <u>Sixth Status Report</u>, noting ongoing mediation and requesting additional briefing extensions to "allow the parties to remain focused on their settlement discussions," (DE 143 at 2), which the court allowed on August 22, 2017.

7) On September 1, 2017, the parties filed a <u>Seventh Status Report</u>, noting ongoing mediation and requesting additional briefing extensions to "allow the parties to remain focused on their settlement discussions," (DE 150 at 2), which the court allowed on September 6, 2017.

8) On September 18, 2017, the parties filed an <u>Eighth Status Report</u>, noting ongoing mediation and requesting additional briefing extensions to "allow the parties to remain focused on their settlement discussions," (DE 152 at 2), which the court allowed on September 19, 2017.

9)     On October 16, 2017, the parties filed a <u>Ninth Status Report</u>, noting the parties no longer wished to continue mediation, requesting resumption of briefing on the motion for partial judgment on the pleadings and motion to amend, and noting that the motion to compel discovery is fully briefed.

On October 23, 2017, defendant Sellers filed the instant motion to dismiss for lack of jurisdiction defendant Wing's crossclaims for annulment, on the basis that such crossclaims are subject to a domestic relations exception to the court's subject matter jurisdiction.

The court directed the parties to file scheduling plans on or before November 22, 2017, for the court's consideration for entry of case management order. The parties filed two separate Rule 26(f) reports on November 22, 2017, both of which requested a stay of discovery pending the court's resolution of the instant motions. Briefing concluded November 27, 2017, and the instant motions remaining for submittal were submitted on November 30, 2017.

## SUMMARY OF ALLEGED FACTS

The facts alleged in the proposed amended complaint may be summarized as follows.

Decedent, a citizen and resident of Wake County, North Carolina, died at the age of 74 on May 11, 2015 . Decedent's adult children are plaintiff, Cone, and Wing. Defendant Cone's spouse is defendant Toby Cone, and her children are defendants Gillian Falls Cone and K.L.C. Plaintiff is a citizen and resident of Summit, New Jersey, and proposed plaintiffs M.E.F., L.C.F., and J.B.F., are his minor children (collectively "plaintiff's minor children").

Throughout their lives and continuing until 2013, Decedent maintained a close, loving relationship with Falls III and Falls III's minor children. For decades until about 2013, Decedent continuously employed the services of and relied upon the advice of Hine to handle all aspects of

his estate planning. Throughout Hine's representation of Decedent, Decedent's clear intention, as evidenced through contemporaneous documents, was to leave the bulk of his estate to his children, including plaintiff.

Decedent established in 2002 a qualified personal residence trust, which provided that upon expiration of a ten-year term, the trust property, including a house in Morehead City, North Carolina (the "Morehead City house") that Decedent used as his personal residence, would pass to plaintiff, outright and free of trust. In 2005, anticipating that title to the Morehead City house would pass to plaintiff August 30, 2012, plaintiff and Decedent executed a lease (the "Lease"), subject of the instant declaratory judgment claim to enforce the Lease, whereby Decedent (as tenant) agreed to rent the Morehead City house from plaintiff (as landlord) starting August 30, 2012, for a one-year term, with option to renew fifteen years thereafter, with monthly rent paid in "a monthly sum mutually agreed between [plaintiff] and [Decedent]," or if not agreed then to be determined by a qualified appraiser. (DE 129-1 at 2).

Decedent consulted with Hine in or around 2007 and executed a last will and testament prepared by Hine that made clear his intentions that (i) each of his grandchildren would receive a pre-death tax bequest of One Million Dollars ($1,000,000) to be held in trust for the benefit of the grandchild; and (ii) Falls III was to be the largest beneficiary of Decedent's estate.

Decedent began a relationship with Sellers in or around 2008. In or around August 2011, without explanation or notice to Hine, Decedent engaged Walter Brodie Burwell, Jr., Esq. ("Burwell") to change his estate planning documents. According to plaintiff, Sellers convinced Decedent to retain Burwell, with whom she had a pre-existing attorney-client relationship, as part of her plan to influence Decedent to change his estate planning documents to include her as a

beneficiary of Decedent's estate. On or about August 4, 2011, Decedent executed the Ralph Lane Falls Revocable Declaration of Trust (the "Revocable Trust") prepared by Burwell. The Revocable Trust was the primary instrument that provided how Decedent's assets would be distributed upon his death. Decedent transferred most of his real and personal property to the Revocable Trust during his lifetime. The Revocable Trust made clear Decedent's intentions that (i) Falls III, Falls III's minor children, Wing, and Cone's minor children were to be the only beneficiaries of Decedent's estate; and (ii) Sellers and Cone were to be excluded as beneficiaries of the estate.

Decedent was diagnosed with bipolar disorder in 1981, which was treated with medication under the care of Dr. Richard Weisler ("Dr. Weisler") until the time of his death. In addition to his mental health issues, Decedent had an extensive history of alcohol abuse from 1960 to 1993. Decedent began experiencing a series of health related issues during 2012 and was first diagnosed with meningioma, benign brain tumors, in or around September 2012.

Decedent again consulted extensively with Hine, his longtime estate planning attorney, about his estate plan over a period of six months beginning in or around March 2012 and continuing through September 2012. After many months of consultation, Decedent executed a last will and testament on September 27, 2012 that had been prepared by Hine and made clear Decedent's intentions that (i) Decedent's children and grandchildren were to be the only beneficiaries of his estate; and (ii) Sellers was not to be a beneficiary of Decedent's estate. Upon further information and belief, Decedent named Sellers as executrix of his estate in order that she would receive only a commission for administering his estate and would not otherwise or share as a beneficiary in Decedent's estate.

On September 27, 2012, Decedent executed a "General Durable Power of Attorney Including Health Care Power of Attorney," (Prop. Am. Compl. ¶ 54; DE 130-1 at 1), prepared by Hine that designated Falls III as his attorney-in-fact and health care agent. On the same date, Decedent executed a "Health Care Power of Attorney" designating Sellers as his "Health Care Agent." (Id.; DE 130-1 at 11).

Decedent underwent surgery for removal of three brain tumors in October 2012, which resulted in complications with his bipolar disorder and the subsequent readmission of Decedent to Duke University Hospital, where he remained through December 2012.

In the time period after August 4, 2011 to Decedent's death, Decedent executed certain amendments to the Revocable Trust that disinherited Falls III and Falls III's minor children that were prepared by Burwell after consultation with Sellers and Cone (collectively referred to as "Trust Amendments").[1]  According to plaintiff, Decedent lacked capacity to execute the Trust Amendments, which allegedly were the product of Sellers, Cone, and other persons acting in concert with or conspiring with Sellers and Cone to manipulate, coerce, and unduly influence Decedent.

On January 7, 2013, Decedent also executed a General Power of Attorney designating Sellers as his attorney-in-fact, which was prepared by Burwell, who notarized the signature of Decedent. Decedent experienced further health issues in 2013 which required multiple surgeries, including an ileostomy, repair of multiple hernias, and an emergency splenectomy.  In 2013, Decedent relapsed and began drinking alcohol heavily. According to plaintiff, this period of heavy drinking began in June 2013 and continued into late 2013, and Decedent was in a manic phase of his bipolar disorder beginning in or around August 2013 continuing into late 2013.

---

[1]  Trust Amendments other than the Fifth Amendment are not attached to the amended complaint.

Decedent fell and hit his head in or about October 2013, which resulted in lengthy hospital stays and admittance to convalescent centers, where he remained until January 2014 while receiving radiation treatment for a recurrence of his brain tumors due to aggressive meningioma. Plaintiff alleges these health issues increased Decedent's dependence on Sellers, Cone, and other persons acting in concert with or conspiring with Sellers and Cone, to provide for his health and safety.

On or about December 5, 2013, Nancy Ledford ("Ledford"), Decedent's assistant, contacted Hine and requested a copy of Decedent's Medical Power of Attorney designating Falls III as his attorney-in-fact. At the request of Sellers, Cone, Burwell, and other persons acting in concert with or conspiring with Sellers and Cone, a mental evaluation and assessment was conducted on Decedent in January 2014 to determine his mental capacity to execute a power of attorney and health care power of attorney. The evaluation was done by Manish A. Fozdar, MD, who issued a report dated January 13, 2014.

On or about March 17, 2014, Decedent executed instruments removing Falls III as the Trustee of the GST Trusts, and naming John T. Bode as Successor Trustee. On November 7, 2014, Decedent commenced the Loan Case against Falls III, seeking to recover an alleged loan of $290,000. Plaintiff alleges that Sellers, Cone, and other persons acting in concert or conspiring with Sellers and Cone influenced and coerced Decedent to file the Loan Case despite allegedly knowing that Decedent had previously agreed in writing that the funds were provided to Falls III as a gift.

On December 10, 2014, Decedent executed a "Fifth Amendment to Revocable Declaration of Trust" (the "Fifth Amendment"), which states:

This amendment amends and restates in its entirety the trust originally executed by me on the 4th day of August, 2011, amended by first amendment dated December

14, 2012, amended by second amendment dated January 7, 2013, amended by third amendment dated February 19, 2014[,] and amended by fourth amendment dated July 17, 2014[,] and applies to all property titled to this trust.

(Prop. Am. Compl., Ex. K (DE 132-5) at 1). The Fifth Amendment grants powers including "Distributions to or for the Benefit of Beneficiaries," who are not specified in the redacted copy of the Fifth Amendment included with the complaint. (Id. at 3-4).[2] According to plaintiff, plaintiff and plaintiff's minor children are not beneficiaries of the Fifth Amendment. (See Prop. Am. Compl. ¶ 77).

The Fifth Amendment directs the "Trustee to take all actions which may be required to keep all leases in full force and effect and fully perform all obligations existing under any leases, specifically including the [Lease]" relating to the Morehead City house. (Prop. Am. Compl., Ex. K (DE 132-5) at 4). According to plaintiff, defendant Goldman Sachs is the Trustee of the Ralph Lane Falls Revocable Declaration of Trust, and has refused to make any rental payments under the Lease. Decedent allegedly lacked capacity to execute the Fifth Amendment, which was allegedly the product of Sellers, Cone, and other persons acting in concert with them to manipulate, coerce, and unduly influence Decedent to disinherit Falls III and Falls III's minor children, and, instead, to make Sellers and Cone the largest beneficiaries of Decedent's estate.

On the same date, Decedent and Sellers obtained a certificate of marriage in Wake County, North Carolina and purportedly were married. According to plaintiff, on that date of both the execution of the Fifth Amendment and purported marriage, Decedent was suffering from diminished mental capacity as the result of recurrence of brain tumors, was dependent upon and submissive to

_____

[2] Unless otherwise specified, page numbers in citations to documents in the record specify the page number provided by the court's Electronic Case Filing (ECF) system, and not any page number included in the text of the underlying document.

Sellers, and did not have the capacity of dispose of property, execute estate planning documents, or marry.

Approximately two weeks later, Decedent underwent a second brain surgery for recurrence of brain tumors due to aggressive meningioma. Following the surgery and discharge from the hospital, Decedent remained in a convalescent center for several months until his death on May 11, 2015. During this time, Sellers, Cone, and other persons allegedly acting in concert with or conspiring with Sellers and Cone, acted to deny Falls III's access to and communication with Decedent by, among other things, hiding Decedent under aliases in the medical facilities where he was admitted.

According to plaintiff, "Decedent's uncharacteristic and bizarre behavior beginning in 2013 and continuing until his death was the result of fraudulent misrepresentations, undue influence, coercion, and isolation directed at Decedent by Sellers, Cone, and other persons acting in concert with or conspiring with Sellers and Cone." (Prop. Am. Compl. ¶ 73). According to plaintiff, "Sellers, Cone, and other persons acting in concert with or conspiring with Sellers and Cone took numerous steps to interfere with and destroy the relationship between Decedent and Falls III and Falls III's minor children and to deny Falls III and Falls III's minor children reasonable access to Decedent until his death on May 11, 2015, which steps included, without limitation, the following:

    a.      Preventing Falls III from visiting Decedent;

    b.      Preventing Decedent from visiting and communicating with Falls III's minor children;

    c.      Refusing to allow Falls III to speak with Decedent on the telephone and instructing employees in the household not to allow Falls III to speak with Decedent;

d.     Failing to inform Decedent when Falls III called him;

e.     Refusing to allow Falls III to visit Decedent in the hospital and convalescent center;

f.     Failing to keep Falls III informed, and misinforming Falls III, about Decedent's medical status and location of the facilities where Decedent was being treated;

g.     Sending e-mails and letters in Decedent's name instructing Falls III and others not to visit or seek information about his medical status;

h.     Telling Decedent lies about Falls III and making defamatory statements to Decedent that Falls III had stolen money from him;

i.     Instigating and controlling the lawsuit brought by Decedent against Falls III, meeting with Decedent's lawyers and other advisors outside the presence of Decedent, and instructing Decedent's lawyers on Decedent's purported intentions with respect to that litigation; and

j.     Meeting with Decedent's lawyers and other advisors outside the presence of Decedent and instructing Decedent's lawyers and other advisors as to Decedent's purported intentions with respect to disinheriting Falls III and Falls III's minor children."

(Id. at ¶75).

## COURT'S DISCUSSION

A.     Motion to Amend

1.     Standard of Review

A party may amend complaint with "the court's leave," and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  "In the absence of any apparent or declared

reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). With respect to futility, the court may deny leave to amend "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Defendants, except for Wing, oppose plaintiff's motion to amend on the basis that proposed expansion of plaintiff's first claim to cover all amendments to the Revocable Trust that disinherit plaintiff, and proposed additions of plaintiff's three minor children, are futile.[3] They also argue that

---

[3] Defendants also oppose plaintiff's restatement of plaintiff's third claim for breach of lease in the proposed amended complaint. Plaintiff does not seek to amend his claim for breach of lease, which claim the court dismissed by order entered May 1, 2017, but plaintiff asserts that he restates the claim "in order to preserve his appeal rights." (Prop. Am. Compl. ¶ 111 n. 1). Where it is not necessary to restate the claim to preserve appeal rights, and where the claim already was dismissed, the court DIRECTS plaintiff to STRIKE the claim from the amended complaint filed in accordance with this order.

the motion to amend is unduly delayed, prejudicial, and in bad faith. The court addresses these grounds in turn below.

a. Futility

In his first proposed amended claim, plaintiff and proposed plaintiffs seek a declaration that "all amendments to the Revocable Trust executed after August 2011 that disinherit Falls III and Falls III's minor children are invalid because they were the product of undue and improper influence and duress . . . or, alternatively, Decedent lacked capacity to execute those amendments." (Prop. Am. Compl. ¶86).

Plaintiff's proposed amended complaint contains sufficient factual allegations to support the asserted claim on behalf of plaintiff and proposed plaintiffs. Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Here, plaintiff's proposed amended complaint sufficiently identifies the instruments he and proposed plaintiffs seek to have declared invalid: "all amendments to the Revocable Trust executed after August 2011 that disinherit Falls III and Falls III's minor children. (Prop. Am. Compl. ¶86).

Defendant Sellers contends, nonetheless, that the proposed amended claim is insufficient because it "is unclear as to which amendment Falls III seeks to enforce." (Def. Sellers Mem. (DE 162) at 5, 6, 24). This argument, however, misreads the claim asserted, because plaintiff's proposed amended claim does not seek a declaration to enforce any particular instrument; rather it seeks a declaration that instruments described in the complaint are invalid due to undue influence and lack of capacity. (See Prop. Am. Compl. ¶86). While plaintiff conceivably could bring a claim seeking

to enforce particular instruments, the Declaratory Judgment Act allows the court to entertain the instant claim "whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Defendant Goldman Sachs contends that the proposed amended claim is "neither plausible nor rational," because what it "is really alleging [is] that any document[s] executed by Decedent that benefited his son or son's children are valid, but any that 'disinherit' him are a product of incompetence or undue influence." (Def. Goldman Sachs Mem. (DE 156) at 5). Again, however, plaintiff does not seek a declaration that any documents executed by Decedent that benefited his son or son's children are valid. Rather, he seeks a declaration as to invalidity of instruments described in the complaint.

Furthermore, plaintiff has alleged sufficient facts to permit an inference that <u>any</u> instruments that disinherited Falls III or Falls III's minor children, in the time period after August 4, 2011, to Decedent's death, are invalid either due to improper influence or lack of capacity. Contrary to defendants' suggestions, viewing the alleged facts in the light most favorable to plaintiff, the validity of any instruments disinheriting plaintiff, executed after August 4, 2011, is called into question through a combination of alleged facts and circumstances, including the following:

1) A long and loving relationship between Decedent and his son until 2013. (Prop. Am. Compl. ¶ 25).

2) The substantial size of the estate. (<u>Id.</u> ¶ 26).

3) Advanced age, recurrence of health related issues, physical and mental weakness, starting in 2012. (<u>Id.</u> ¶¶ 52, 87).

4) Recurrence of alcohol abuse starting in 2013. (<u>Id.</u> ¶ 51).

5) Relationship beginning with defendant Sellers in 2008, with marriage purportedly taking place only in December 2014, approximately six months before death, during time of extensive health complications and diminished mental capacity as a result of recurrence of brain tumors, when Decedent was dependent upon and submissive to Sellers. (Id. ¶¶ 49, 70-72).

6) Decedent's change from using estate planning attorney Hine, upon which Decedent had relied continuously and extensively "for decades," to using attorney with pre-existing relationship with defendant Sellers for execution of instruments benefitting Sellers and disinheriting plaintiff. (Id. ¶¶ 27, 48, 50, 53, 56).

7) Decedent's clear intention, as evidenced through contemporaneous documents throughout Hine's representation of Decedent, to leave the bulk of his estate to his children and grandchildren, including Falls III and Falls III's minor children. (Id. ¶ 31).

8) Defendants Sellers's and Cone's meetings with Decedent's lawyers and other advisors outside the presence of Decedent, instructing them as to Decedent's purported intentions with respect to disinheriting Falls III and Falls III's minor children. (Id. ¶ 75).

9) Significant and extended health issues from 2012 to time of death, including issues with mental functioning, which increased Decedent's dependence on defendants Sellers, Cone, and other persons acting in concert with them, to provide for his health and safety. (Id. ¶¶ 51, 52, 55, 58-61, 70-73).

10) "Decedent's uncharacteristic and bizarre behavior beginning in 2013 and continuing until his death." (Id. ¶ 73).

11) Defendant Sellers and Cone isolation of Decedent and prevention of communications between Decedent and Falls III, his children, and others, around the time of hospitalizations, competency exams, execution of estate planning documents, up until time of death, including "hiding Decedent under aliases in the medical facilities where he was admitted." (Id. ¶¶ 72, 74, 75, 87).

12) Defendant Sellers's and Cone's alleged communications to Decedent of lies about Falls III and defamatory statements to Decedent that Falls III had stolen money from him, as well as instigation of the Loan case and control of the lawsuit. (Id. ¶ 75).

13) Defendant Sellers's and Cone's destruction of the previously loving relationship that Falls III shared with his father and Falls III's minor children shared with their grandfather, particularly toward the end of Decedent's life when his physical and mental capacity were diminished. (Id. ¶ 23).

14) Decedent's execution of trust amendments disinheriting Falls III and Falls III's minor children that are "substantially different from Decedent's previous estate plan and disinherit the natural objects of his bounty in favor of [a person] with whom there are no ties of blood." (Id. ¶ 87).

Considering these facts and circumstances, the complaint is sufficiently descriptive of the circumstances and time period to permit an inference that any documents that disinherit Falls III and Falls III's minor children during the time period after August 2011 are invalid due to improper influence or lack of capacity.

Defendant Sellers and the Cone defendants also argue that it is futile for plaintiff to join his minor son, J.B.F., as a plaintiff because he was never named as a beneficiary in the Revocable Trust

or in any amendments to the Revocable Trust. As such, they suggest, "there could be no expectation of inheritance derived from [Decedent] by any children borne to [Falls III] that were not specifically named in the trust." (Cone def's Mem. (DE 157) 21). This argument, however, is based upon a view of the facts in the light most favorable to defendants, and it ignores the allegation in the proposed amended complaint that throughout Hine's representation of Decedent, Decedent's clear intention, as evidenced through contemporaneous documents, was to leave the bulk of his estate to his children and grandchildren, including Falls III and Falls III's minor children, who include proposed plaintiff J.B.F. (Id. ¶ 31).

In sum, the amendments and additions set forth in the proposed amended complaint are not futile. In so holding, the court expresses no opinion on the ultimate merits of any of the claims considered upon a more complete record.

b. Delay

Defendants, other than Wing, argue that plaintiff's motion for leave to amend is unduly delayed because plaintiff could have sought to amend his complaint earlier than June 2017, no later than January 2017, when plaintiff received in discovery unredacted copies of amendments to the Revocable Trust.

While the court agrees that plaintiff's motion was delayed, it was not unduly delayed such that the proposed amendments should be prevented on that basis. The court has not yet entered a case management order setting a deadline for amending the pleadings or joining parties. As demonstrated by the statement of the case, above, entry of such case management order was postponed, by consent of the parties, in January 2017, to allow the parties to conduct an initial limited period of discovery followed by mediation efforts. Now that this case has returned to

litigation, following nine status reports on mediation, the case is once again ripe for entry of case management order following entry of this order, which will allow for a traditional discovery period. The instant amendment to the complaint at this juncture in the case thus is not unduly delayed.

Moreover, "[d]elay alone . . . is an insufficient reason to deny the plaintiff's motion to amend." Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006). The factor of delay must be accompanied by "prejudice or bad faith[] to justify denial of leave to amend." Davis v. Piper Aircraft Corp., 615 F.2d 606, 614 (4th Cir. 1980). As set forth below, defendants have demonstrated neither prejudice nor bad faith to justify denial of leave to amend.

        c.      Prejudice

Defendant Sellers argues that she will be prejudiced in several respects by the proposed amendments, which the court addresses in turn below.

First, defendant Sellers contends, if plaintiff prevails on the first claim in the proposed amended complaint, she will take nothing under the Revocable Trust, and she should instead be able to elect to take a spousal elective share or a life interest from Mr. Falls estate. On this basis, she claims she is prejudiced because the time to make such an election appears to be foreclosed by applicable statutes.

These consequences defendant Sellers asserts, however, are not the type of prejudice that foreclose amendment of a complaint. "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing[;] . . . the further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant." Laber, 438 F.3d at 427. "A common example of a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the

defendant, and is offered shortly before or during trial." Id. (quotations omitted). "An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." Id. (emphasis added); see Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir.1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case.") (emphasis added).

Here, there is no prejudice to defendant Sellers by the proposed amendment because, due to the current status of the case schedule, there is no impediment to gathering facts necessary for defending the claim or preparing defendants' case. There may be numerous adverse consequences that will flow if plaintiff succeeds on the proposed amended claim; but such success is not a prejudice that result from the motion but rather from the substantive merits of the claim. See Lone Star Steakhouse & Saloon v. Alpha of Va., Inc., 43 F.3d 922, 940 (4th Cir.1995) ("[A] motion to amend may be denied when it has been unduly delayed and when allowing the motion would prejudice the nonmovant.") (emphasis added). The court need not and does not speculate as to the wide variety of adverse or complicating consequences that could flow to defendant Sellers, or any other party, upon success of the proposed amended claim, in determining the instant motion.

Defendant Sellers's next argues that she would be prejudiced, in the event the plaintiff prevails in this action, because it would lead to "the anomalous and untenable result that the trust documents executed on a certain date would be deemed invalid while unchallenged will documents on the same date," as well as unchallenged marriage on the same date, "would stand." (Def. Sellers' Mem. (DE 162) at 14). Defendant Sellers contends that plaintiff must bring all of his claims or potential claims in the same action, or else this will prevent defendant Sellers from bringing

"appropriate counterclaims based on the issues presented." (Id.). As noted before, defendant

Sellers's speculation as to the consequences of success on plaintiff's proposed claims is not a basis

for denying a motion to amend complaint, where defendant has ample opportunity to defend the

claim as stated. Furthermore, contrary to defendant Sellers's suggestion, there is no requirement that

a plaintiff must bring all claims he has or could have in a single action in federal court. See, e.g.,

Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831 (2002) (recognizing "the

plaintiff is the master of the complaint," and "the well-pleaded-complaint rule enables . . . eschewing

claims based on" one law in favor of another).[4]

In sum, defendant Sellers has not demonstrated prejudice to justify denial of the instant

motion to amend.

     d.    Bad Faith

Defendant Sellers and the Cone defendants argue that plaintiff's motion to amend is in bad

faith because the "extensive evidence" produced during the prior limited discovery period

demonstrates that Decedent was not the subject of any undue influence and was not incompetent

when the Revocable Trust and its amendments were executed. (Def. Sellers Mem. (DE 162) at 18;

see Cone Defs' Mem. (DE 157) at 12-19). Defendants' argument based in bad faith, however, is

misplaced. "Unless a proposed amendment may clearly be seen to be futile because of substantive

---

[4] Cases defendant Sellers cites regarding "claim splitting" are inapposite here as defendant Sellers points to no other ongoing litigation proceeding to final judgment, not otherwise stayed or held in abeyance, on the issues presented in the instant case. Cf. Stone v. Dep't of Aviation, 453 F.3d 1271, 1279 (10th Cir. 2006) ("One major function of claim preclusion, then, is to force a plaintiff to explore all the facts, develop all the theories, and demand all the remedies in the first suit . . . . The transaction is the basis of the litigative unit or entity which may not be split.") (quotations omitted); Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) ("Because of the obvious difficulties of anticipating the claim or issue-preclusion effects of a case that is still pending, a court faced with a duplicative suit will commonly stay the second suit, dismiss it without prejudice, [or] enjoin the parties from proceeding with it.") (emphasis added). To the extent defendant Sellers contends she is prejudiced by a multiplicity of suits, she may seek relief in an appropriate motion, in the appropriate forum, when the circumstance arises.

or procedural considerations, conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." Davis, 615 F.2d at 613. As set forth above, viewing the alleged facts in the light most favorable to plaintiff, the proposed amendments are not futile. Defendants' presentation of evidence they have selected in the light most favorable to them does not dictate a finding of bad faith on the part of plaintiff. Moreover, plaintiff has pointed to contrary evidence such that a finding of bad faith at this juncture is not warranted. (See, e.g, Plaintiff's Resp. to Interrogatories (DE 174-3)). Thus, defendants have not demonstrated that plaintiff acted in bad faith in moving to amend the complaint.

In sum, absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," the leave sought must be and is freely given. Foman, 371 U.S. at 182. Plaintiff is directed to file his proposed amended complaint within 7 days of the date of this order, except that plaintiff shall strike the third claim for breach of lease, which claim the court already dismissed by order entered May 1, 2017.

B.      Motion for Judgment on the Pleadings

Where the court has granted plaintiff's motion to amend complaint, defendant Sellers's motion for judgment on the pleading based upon the first claim in the original complaint must be and is denied as moot.

C.      Motion to Compel

During the limited phase of discovery and early mediation, plaintiff and defendant Wing filed the instant motion to compel discovery, seeking 1) an accounting of all estate and trust activity and

2) documents evidencing communications between Goldman Sachs and the other defendants, withheld on the basis of a purported common interest privilege.

With respect to the first category of documents sought, in light of the procedural posture in which the discovery request was made, the court denies as moot the motion to compel. Plaintiff may make discovery requests in accordance with the Federal Rules of Civil Procedure, and there is no indication in the response of defendant Goldman Sachs to the motion to compel that it categorically will reject a discovery request seeking such documents. Indeed, it notes in its response that "such information might be the subject of subsequent discovery." (Def. Goldman Sachs Resp. (DE 108) at 3).

With respect to the second category of documents sought, in light of the procedural posture in which the discovery request was made, the court also denies as moot the motion to compel. Nevertheless, where defendant Goldman Sachs has asserted a general objection to the production of such documents on the basis of a "common interest" privilege (Id. at 12; Privilege Log Excerpts (DE 105-4) at 2-8), the court writes separately to highlight certain issues regarding evaluation of the assertion of privilege.

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. "Historically, an attorney–client relationship arises between an attorney and a single client the attorney represents." Friday Investments, LLC v. Bally Total Fitness of the Mid-Atl., Inc., 805 S.E.2d 664, 667 (N.C. 2017). However, "individuals with a common interest in the litigation should be able to freely communicate with their attorney, and with each other, to more effectively defend or prosecute their claims." Id. at 668. Accordingly, the North Carolina Supreme Court has recognized that a "need to protect the free flow of

information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter." Raymond v. N. Carolina Police Benevolent Ass'n., Inc., 365 N.C. 94, 99 (2011) (quoting In re Grand Jury Subpoenas, 902 F.2d 244, 249 (4th Cir.1990)).

"The joint defense attorney-client privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." Id. (quotations omitted). "As such, any communications between them that also satisfied the five-factor test articulated in State v. Murvin, 304 N.C. 523, 531 [] (1981), are privileged." Friday Investments, LLC, 805 S.E.2d at 668. Under the Murvin test, "A privilege exists if (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege." State v. Murvin, 304 N.C. 523, 531 (1981). "[I]f any one of these five elements is not present in any portion of an attorney-client communication, that portion of the communication is not privileged." Friday Investments, LLC, 805 S.E.2d at 669.

Here, defendant Goldman Sachs has identified four documents in a privilege log pertaining to defendant Sellers, and eight documents in a privilege log pertaining to the Cone defendants, for which it asserts a "common interest privilege." (Privilege Log (DE 105-4) at 4 & 6). The privilege logs describe in each entry correspondence in which Burwell is either a sender or recipient, all dated between May 20, 2015 and June 25, 2015. The court, however, does not have sufficient information

about the contents of the documents, apart from summary suggestions in the parties' briefs, to determine whether they are all properly protected by the common interest privilege.

For example, it is not clear from the description in the privilege logs whether the communications in the documents concern only a defense to a claim seeking to invalidate the Fifth Amendment, in which plaintiff is alleged not to be a named beneficiary, or whether the communications concern some other instrument, such as an earlier amendment or the original Revocable Trust document, in which plaintiff may be a named beneficiary. See N.C. Gen. Stat. § 36C-8-811 (stating that "[a] trustee shall take reasonable steps to . . . defend claims against the trust"); N.C. Gen. Stat. § 36C-8-802 ("A trustee shall administer the trust solely in the interests of the beneficiaries."). Accordingly, in the event the assertion of privilege again is contested during the course of discovery, the court may require submission in camera of the disputed documents.

In sum, the instant motion to compel is denied as moot, without prejudice to asserting again the issues raised during the course of discovery in this matter, in accordance with the foregoing.

D.    Motion to Dismiss Annulment Claims

    1.    Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams, 697 F.2d at 1219. Where, as here, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based," then "all facts alleged in the complaint are assumed true." Adams, 697 F.2d at 1219. "Where the jurisdictional facts are intertwined with the facts central to the merits of the dispute . . . the entire factual dispute is appropriately resolved only

by a proceeding on the merits," and Rule 12(b)(1) is "an inappropriate basis" to grant dismissal. Adams, 697 F.2d at 1219-20.

2.      Analysis

Defendant Sellers contends that the court does not have jurisdiction to consider the crossclaims by defendant Wing for annulment (crossclaim count two) and declaration of annulment (part of crossclaim count three) of the purported marriage between Decedent and defendant Sellers, under a "domestic relations" exception to diversity jurisdiction.

Defendant Wing asserts the subject crossclaims on the basis of the court's diversity jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367. The United States Supreme Court has recognized a "'domestic relations' exception to diversity jurisdiction," which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 692, 703 (1992). Falling within the scope of such exception are "those cases where a federal court is asked to grant a decree of divorce or annulment, or to grant custody or fix payments for support" Id. at 703 n.6 (quoting McIntyre v. McIntyre, 771 F.2d 1316, 1317 (9th Cir. 1985) (opinion of Kennedy, J.)) (emphasis added).

Defendant Wing's crossclaims for annulment (crossclaim count two) and declaration of annulment (part of crossclaim count three) fall squarely within this "domestic relations" exception to diversity jurisdiction. Accordingly, the court lacks jurisdiction over such claims.

Defendant Wing argues that her crossclaims for annulment appropriately may be heard pursuant to the court's supplemental jurisdiction. Defendant Wing has not cited, however, any case in which original jurisdiction is grounded solely in diversity of citizenship, where the court has maintained supplemental jurisdiction over claims barred by the "domestic relations" exception to

28

diversity jurisdiction.  Rather, defendant Wing cites cases in which federal question jurisdiction provided an independent basis for jurisdiction, which are inapposite here.  See, e.g., United States v. Johnson, 114 F.3d 476, 481 (4th Cir. 1997) ("The 'jurisdictional exception,' in the first place, is applied only as a judicially implied limitation on the diversity jurisdiction; it has no generally recognized application as a limitation on federal question jurisdiction.").

The court finds more pertinent drawing a parallel between the "probate exception" to diversity jurisdiction and the "domestic relations" exception to diversity jurisdiction.  For example, in Turja v. Turja, 118 F.3d 1006 (4th Cir. 1997), the court of appeals held that the district court did not err "in refusing to exercise jurisdiction over . . . claims that [decedent] lacked testamentary capacity and was unduly influenced in executing her will," even though the district court adjudicated through trial claims that a trust was null and void on the same factual basis. Id. at 1008. The court recognized the "'probate exception' as a jurisprudential limit on diversity jurisdiction," developed through Supreme Court case law, that provided the jurisdictional basis for the court's holding. Id.

In the same manner here, the "domestic relations exception," as a jurisprudential limit on diversity jurisdiction, developed through Supreme Court case law, provides the jurisdictional basis for the court's holding.  The court recognizes defendant Wing's argument that facts supporting the annulment crossclaims may overlap with the facts supporting claims challenging the Fifth Amendment, executed on the same date.  However, as noted in Truja, any findings of fact in the present case can be taken into account in a state court proceeding.  See Turja, 118 F.3d at 1010. (noting "[w]e are confident that the Virginia probate court will take into account the district court's factual findings regarding the trust documents when evaluating [decedent's] testamentary capacity to execute her will").  Furthermore, other procedural remedies, such as stay or holding in abeyance

certain proceedings in favor of others may be employed. Finally, the court notes that dismissal of defendant Wing's counterclaims for annulment does not necessarily render the purported marriage or the circumstances under which it took place irrelevant to the issues presented by the instant case.

In sum, due to the "domestic relations exception" to federal diversity jurisdiction, defendant Wing's counterclaims for annulment and for declaratory judgment of annulment must be and are hereby dismissed for lack of subject matter jurisdiction.

E.    Case Management Order

Where all parties requested an opportunity to submit a revised Rule 26(f) report and plan upon the court's ruling on the instant motions, the court directs the parties to file a revised Rule 26(f) report within 14 days of the date of this order. To assist the court with development of a case management order, the court encourages the parties to file jointly a single Rule 26(f) report, noting therein any differences of opinion with respect to deadlines or limitations covered, rather than filing separate Rule 26(f) reports. Thereupon, the court will enter a case management order or such further order as is warranted regarding case scheduling.

## CONCLUSION

Based on the foregoing, plaintiff's motion to amend (DE 125) is GRANTED. Plaintiff is directed to file his proposed amended complaint within **7 days** of the date of this order, except that plaintiff shall strike the third claim for breach of lease therein. Defendant Sellers's motion for partial judgment on the pleadings (DE 106) is DENIED. Plaintiff's and defendant Wing's motion to compel discovery (DE 104) is DENIED AS MOOT, without prejudice as set forth herein. Defendant Sellers's motion to dismiss defendant Wing's crossclaims for annulment (DE 166) is GRANTED. Accordingly, defendant Wing's crossclaims for annulment (crossclaim count two) and declaration

of annulment (part of crossclaim count three) are DISMISSED for lack of subject matter jurisdiction. The court DIRECTS the parties to file a revised Rule 26(f) report within **14 days** of the date of this order, in accordance with the directions set forth herein.

SO ORDERED, this the 18th day of December, 2017.

LOUISE W. FLANAGAN
United States District Judge