IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-740-FL

| | | |
|---|---|---|
| RALPH L. FALLS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| GOLDMAN SACHS TRUST | ) | |
| COMPANY, N.A. as Executor of the | ) | |
| Estate of Ralph L. Falls, Jr.; GOLDMAN | ) | |
| SACHS TRUST COMPANY, N.A. | ) | |
| as Trustee of the Ralph Lane Falls | ) | |
| Revocable Declaration of Trust; DIANE | ) | |
| C. SELLERS; LOUISE FALLS CONE | ) | |
| individually and on behalf of her minor | ) | |
| children and unborn issue; TOBY CONE; | ) | |
| MARY COOPER FALLS WING | ) | |
| individually and on behalf of her minor | ) | |
| children and unborn issue; GILLIAN | ) | |
| FALLS CONE individually and on behalf | ) | |
| of her minor children and unborn issue; | ) | |
| K.L.C. by her next friends and parents, | ) | |
| Louise Falls Cone and Toby Cone, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon the following motions:

1) Motion to dismiss for failure to state a claim and for lack of jurisdiction by defendants
Louise Falls Cone, Gillian Falls Cone, Toby Cone, K.L.C., and Diane C. Sellers
(collectively, "Sellers and the Cone Defendants") (DE 194);

2) Motion to dismiss for failure to state a claim by defendant Goldman Sachs Trust Company,
N.A. ("Goldman Sachs") (DE 200);

3)      Motion to dismiss defendant Mary Cooper Falls Wing's ("Wing") crossclaims for failure to state a claim by Sellers and the Cone Defendants (DE 206);

4)      Defendant Wing's motion to dismiss her own crossclaims for lack of subject matter jurisdiction and pursuant to Federal Rule of Civil Procedure 41 (DE 217);

5)      Defendant Goldman Sachs's motion to dismiss defendant Wing's crossclaims (DE 221);

6)      Plaintiffs' motion for leave to file amended complaint, filed by plaintiffs (DE 226);

7)      Plaintiffs' motions to withdraw counsel (DE 238, 243);

8)      Defendant Wing's motion to stay discovery (DE 239).

The motions to dismiss and motion to amend have been fully briefed, and the issues raised are ripe for ruling.  The time for response to the remaining motions has passed.  For the following reasons, defendant Wing's motion to dismiss her crossclaims is granted for lack of jurisdiction and for abstention principles as set forth herein; plaintiffs' claims are dismissed sua sponte by the court also on the same basis; remaining motions to dismiss are denied as moot; the motion to amend is denied; the motions to withdraw are granted; and the motion to stay discovery is denied as moot.

## STATEMENT OF THE CASE

Plaintiff Ralph L. Falls, III, commenced this action on August 12, 2016, asserting the following claims:

1)      Claim seeking declaration that a certain Fifth Amendment to Revocable Declaration of Trust of Ralph L. Falls, Jr., (the "Revocable Trust"), purportedly executed by plaintiff Ralph L. Falls, III's father, Ralph L. Falls, Jr., ("Decedent"), before his death, is invalid;

2)      Claim of malicious interference with the right to inherit, asserted against defendant Sellers;

3) Breach of lease claim pertaining to a lease between Decedent and plaintiff Ralph L. Falls, III, on a property in Morehead City, North Carolina (the "lease");

4) Alternative claim seeking declaration regarding the enforcement of a provision in the Fifth Amendment to Revocable Trust allegedly requiring defendant Goldman Sachs Trust Company, N.A., to maintain the lease.

In November 2016, defendant Goldman Sachs answered and filed a motion to dismiss plaintiff Ralph L. Falls III's third claim for breach of lease. Sellers and the Cone Defendants answered, including with counterclaim for declaratory judgment that plaintiff is not entitled to attorney's fees. Defendant Wing filed an answer containing admissions and allegations generally aligned with the allegations in the complaint, along with the following crossclaims asserted against the other defendants:

1) Declaratory judgment that the Revocable Trust or its amendments are invalid, due to lack of capacity and improper influence;

2) Annulment of marriage between Decedent and defendant Sellers due to lack of capacity and improper influence;

3) Alternative declaratory judgment that the purported marriage and the Revocable Trust or its amendments are invalid due to lack of capacity and improper influence.

On December 20, 2016, the court entered an order addressing both the instant case and a second case involving two of the same parties, Goldman Sachs Trust Company, N.A., as Executor of the Estate of Ralph L. Falls, Jr. v. Ralph L. Falls, III, No. 5:14-CV-777-FL (E.D.N.C.), concerning an alleged loan by Decedent to Falls III (hereinafter the "Loan Case"). In such order the court severed a counterclaim by Falls III for breach of fiduciary duty related to the lease provision

in the Fifth Amendment to Revocable Trust, and consolidated that counterclaim into the instant case. The court noticed a Rule 16(b) scheduling conference in the instant case to be held concurrently with pre-trial conference in the Loan Case, anticipating consideration of "settlement mechanism(s) which may lead to a global resolution of the issues raised in these cases." (Order (DE 62) at 3).

At hearing on January 3, 2017, the court stayed all trial activities in the Loan Case pending a limited initial period of discovery in aid of global settlement in both cases. In consent order entered January 17, 2017, the court noted: "Should settlement efforts prove unsuccessful following a mediation or other court-hosted settlement conference, this Court shall enter a complete case management scheduling order that shall govern with respect to all remaining activity in this case through dispositive motions." (Order (DE 75) at 4).

During the initial period of limited discovery in aid of settlement, on May 1, 2017, the court granted Goldman Sachs's motion to dismiss plaintiff Ralph L. Falls III's breach of lease claim as time-barred. Settlement efforts by the parties resulted in impasse, announced in October, 2017.

Upon resumption of activity in the case, on December 18, 2017, upon motions of the parties, the court allowed plaintiff Ralph L. Falls, III, to file an amended complaint, which expands his first claim ("Count I") to assert that "all amendments" to the "Ralph Lane Falls Revocable Declaration of Trust" "executed after August 2011 that disinherit Falls III and Falls III's minor children are invalid." (Am. Compl. ¶ 86). Plaintiff Ralph L. Falls, III, expands his second claim ("Count II") to include allegations against the Cone defendants, and he expands his claim regarding the lease (now "Count III") to include allegations regarding the Fourth Amendment to Revocable Trust. (Id. ¶ 114). Plaintiff Ralph L. Falls, III, also adds his minor children, M.E.F., L.C.F., and J.B.F., as plaintiffs, as well as factual allegations against the Cone defendants.

In the same order, the court dismissed for lack of jurisdiction defendant Wing's crossclaims for annulment, on the basis that such crossclaims are subject to a domestic relations exception to the court's subject matter jurisdiction.

In case management order entered January 9, 2018, the court set a April 1, 2019, deadline for completion of discovery, and April 30, 2019, deadline for dispositive motions.

Sellers and the Cone Defendants filed the instant motion to dismiss on January 16, 2018, seeking dismissal of Count I and Count II of plaintiffs' amended complaint for failure to state a claim and for lack of subject matter jurisdiction. Defendant Goldman Sachs filed the instant motion to dismiss on January 30, 2018, adopting arguments of Sellers and the Cone Defendants as to dismissal of Count I, and seeking dismissal of Count III for failure to state a claim and for lack of subject matter jurisdiction.

Defendant Wing filed an amended answer and crossclaim on February 6, 2018, wherein defendant Wing now asserts three crossclaims: 1) claim to invalidate the Revocable Trust or its amendments, citing North Carolina General Statute section 36C-6-604; 2) alternatively, declaration of invalidity related to the Trust; 3) a tort claim of malicious interference with the right to inherit, including as to Mr. Falls' Will, the Revocable Trust, and its amendments which seeks actual and punitive damages.

Upon filing of amended crossclaims, Sellers and the Cone Defendants filed the instant motion to dismiss crossclaims on February 12, 2018, for failure to state a claim and for lack of subject matter jurisdiction. In support of the motion, Sellers and the Cone Defendants rely upon a caveat proceeding filed by defendant Wing in the Superior Court of Wake County, North Carolina, before the clerk, In the Matter of the Estate of Ralph L. Falls, Jr., filed November 13, 2017, File No.

15-E-1997, including a certificate of probate and the Will of Ralph Lane Falls, Jr., filed June 8, 2015. (DE 206-1) (hereinafter, the "caveat proceeding").

Defendant Wing filed the instant motion to dismiss her crossclaims for lack of subject matter jurisdiction and voluntarily under Rule 41. In support of the motion, defendant Wing relies upon letters testamentary filed in the Superior Court of Wake County, North Carolina, In the Matter of the Estate of Ralph L. Falls, Jr., issued June 8, 2015, by probate judge, File No. 15-E-1997 (DE 217-1).

Defendant Goldman Sachs filed on March 13, 2018, the instant motion to dismiss defendant Wing's crossclaims, which adopts the arguments advanced in support of Sellers and the Cone Defendants' motion to dismiss.

Trial in the Loan Case concluded on March 29, 2018, with a verdict against Ralph L. Falls, III, in favor of Goldman Sachs for damages in the amount of $193,000.00. On July 16, 2018, the court denied request by Ralph L. Falls, III, for relief in the form of a setoff defense in that Loan Case for rent payable and costs of maintenance and repair related to the lease. The court also denied motions for judgment notwithstanding the verdict and for new trial. Ralph L. Falls, III, has appealed the court's judgment in the Loan Case and that appeal remains pending.

In the meantime, on June 17, 2018, plaintiffs filed the instant motion to amend complaint in the instant case in which he seeks to: 1) add Nancy Ledford ("Ledford") as an additional party; 2) add Ledford as a defendant to the claim for malicious interference with the right to inherit; 3) add a claim for unjust enrichment against Sellers and the Cone Defendants; 4) add a claim for breach of fiduciary duty against Sellers; (5) add Goldman Sachs, in its individual corporate capacity, as a defendant; 6) add a claim for wrongful distributions pursuant to N.C. Gen. Stat. § 36C-6-604 against

Goldman Sachs, in its individual corporate capacity; and 7) add a claim for injunctive relief against Goldman Sachs, in its individual corporate capacity.

Defendants, except for defendant Wing, filed a response in opposition to the motion to amend, which relies upon the Revocable Trust documents; discovery and correspondence between the parties; and the following state court documents:

1)      Complaint and request for declaratory judgment filed by plaintiffs and defendant Wing in the Superior Court of Wake County, on March 30, 2017, Case No. 17-CVS-3947 (DE 235-11);

2)      Request for declaratory judgment filed by plaintiffs and defendant Wing in the Superior Court of Wake County, on March 16, 2017, Case No. 17-CVS-3283 (DE 235-12);

3)      The caveat proceeding (DE 235-13);

4)      First amended complaint filed by defendant Wing in the Superior Court of Wake County, on May 29, 2018, Case No. 18-CVS-5916 (DE 235-14);

5)      A complaint and request for declaratory judgment filed by plaintiffs in the Superior Court of Wake County on May 9, 2018, Case No. 18-CVS-5830 (DE 235-16);

6)      A motion to consolidate filed by defendant Wing in the Superior Court of Wake County, concerning the five state court proceedings specified above (DE 235-15).

On August 22, 2018, plaintiffs filed the instant motion to withdraw counsel, pertaining to counsel Lynn Chandler and Stephanie Daniel. On August 24, 2018, defendant Wing filed the instant motion to stay discovery. On August 29, 2018, on expedited basis, the court stayed briefing on motion to stay discovery, as well as all discovery in this matter, pending decision on plaintiffs' motion to withdraw. On September 4, 2018, plaintiffs filed the instant motion to withdraw counsel,

pertaining to counsel Lucas Garber. The court stayed conduct of plaintiff Ralph L. Falls III's deposition pending decision on the motion.

## SUMMARY OF ALLEGED FACTS

For ease of reference, the court repeats below the summary of facts alleged in the amended complaint from its December 18, 2017, order.

Decedent, a citizen and resident of Wake County, North Carolina, died at the age of 74 on May 11, 2015 . Decedent's adult children are plaintiff, Cone, and Wing. Defendant Cone's spouse is defendant Toby Cone, and her children are defendants Gillian Falls Cone and K.L.C. Plaintiff Ralph L. Falls, III, is a citizen and resident of Summit, New Jersey, and plaintiffs M.E.F., L.C.F., and J.B.F., are his minor children.

Throughout their lives and continuing until 2013, Decedent maintained a close, loving relationship with plaintiffs. For decades until about 2013, Decedent continuously employed the services of and relied upon the advice of attorney John C. Hine ("Hine") to handle all aspects of his estate planning. Throughout Hine's representation of Decedent, Decedent's clear intention, as evidenced through contemporaneous documents, was to leave the bulk of his estate to his children, including plaintiff.

Decedent established in 2002 a qualified personal residence trust, which provided that upon expiration of a ten-year term, the trust property, including a house in Morehead City, North Carolina (the "Morehead City house") that Decedent used as his personal residence, would pass to plaintiff, outright and free of trust. In 2005, anticipating that title to the Morehead City house would pass to plaintiff Ralph L. Falls, III, on August 30, 2012, plaintiff Ralph L. Falls, III, and Decedent executed the lease, subject of plaintiff's instant claim regarding the lease ("Count III"), whereby Decedent

8

(as tenant) agreed to rent the Morehead City house from plaintiff Ralph L. Falls, III, (as landlord) starting August 30, 2012, for a one-year term, with option to renew fifteen years thereafter, with monthly rent paid in "a monthly sum mutually agreed between [plaintiff] and [Decedent]," or if not agreed then to be determined by a qualified appraiser. (DE 186-3 at 2).

Decedent consulted with Hine in or around 2007 and executed a last will and testament prepared by Hine that made clear his intentions that (i) each of his grandchildren would receive a pre-death tax bequest of One Million Dollars ($1,000,000) to be held in trust for the benefit of the grandchild; and (ii) Falls III was to be the largest beneficiary of Decedent's estate.

Decedent began a relationship with Sellers in or around 2008. In or around August 2011, without explanation or notice to Hine, Decedent engaged Walter Brodie Burwell, Jr., Esq. ("Burwell") to change his estate planning documents. According to plaintiff, Sellers convinced Decedent to retain Burwell, with whom she had a pre-existing attorney-client relationship, as part of her plan to influence Decedent to change his estate planning documents to include her as a beneficiary of Decedent's estate. On or about August 4, 2011, Decedent executed the Revocable Trust, prepared by Burwell. The Revocable Trust was the primary instrument that provided how Decedent's assets would be distributed upon his death. Decedent transferred most of his real and personal property to the Revocable Trust during his lifetime. The Revocable Trust made clear Decedent's intentions that (i) Falls III, Falls III's minor children, Wing, and Cone's minor children were to be the only beneficiaries of Decedent's estate; and (ii) Sellers and Cone were to be excluded as beneficiaries of the estate.

Decedent was diagnosed with bipolar disorder in 1981, which was treated with medication under the care of Dr. Richard Weisler ("Dr. Weisler") until the time of his death. In addition to his

mental health issues, Decedent had an extensive history of alcohol abuse from 1960 to 1993. Decedent began experiencing a series of health related issues during 2012 and was first diagnosed with meningioma, benign brain tumors, in or around September 2012.

Decedent again consulted extensively with Hine, his longtime estate planning attorney, about his estate plan over a period of six months beginning in or around March 2012 and continuing through September 2012. After many months of consultation, Decedent executed a last will and testament on September 27, 2012 that had been prepared by Hine and made clear Decedent's intentions that (i) Decedent's children and grandchildren were to be the only beneficiaries of his estate; and (ii) Sellers was not to be a beneficiary of Decedent's estate. Upon further information and belief, Decedent named Sellers as executrix of his estate in order that she would receive only a commission for administering his estate and would not otherwise or share as a beneficiary in Decedent's estate.

On September 27, 2012, Decedent executed a "General Durable Power of Attorney Including Health Care Power of Attorney," (Am. Compl. ¶ 54; DE 186-5 at 1), prepared by Hine that designated Falls III as his attorney-in-fact and health care agent. On the same date, Decedent executed a "Health Care Power of Attorney" designating Sellers as his "Health Care Agent." (Id.).

Decedent underwent surgery for removal of three brain tumors in October 2012, which resulted in complications with his bipolar disorder and the subsequent readmission of Decedent to Duke University Hospital, where he remained through December 2012.

In the time period after August 4, 2011 to Decedent's death, Decedent executed certain amendments to the Revocable Trust that disinherited Falls III and Falls III's minor children that were prepared by Burwell after consultation with Sellers and Cone (collectively referred to as "Trust

Amendments").[1]    According to plaintiff, Decedent lacked capacity to execute the Trust Amendments, which allegedly were the product of Sellers, Cone, and other persons acting in concert with or conspiring with Sellers and Cone to manipulate, coerce, and unduly influence Decedent.

On January 7, 2013, Decedent also executed a General Power of Attorney designating Sellers as his attorney-in-fact, which was prepared by Burwell, who notarized the signature of Decedent. Decedent experienced further health issues in 2013 which required multiple surgeries, including an ileostomy, repair of multiple hernias, and an emergency splenectomy.  In 2013, Decedent relapsed and began drinking alcohol heavily. According to plaintiff, this period of heavy drinking began in June 2013 and continued into late 2013, and Decedent was in a manic phase of his bipolar disorder beginning in or around August 2013 continuing into late 2013.

Decedent fell and hit his head in or about October 2013, which resulted in lengthy hospital stays and admittance to convalescent centers, where he remained until January 2014 while receiving radiation treatment for a recurrence of his brain tumors due to aggressive meningioma.  Plaintiffs allege these health issues increased Decedent's dependence on Sellers, Cone, and other persons acting in concert with or conspiring with Sellers and Cone, to provide for his health and safety.

On or about December 5, 2013, Nancy Ledford ("Ledford"), Decedent's assistant, contacted Hine and requested a copy of Decedent's Medical Power of Attorney designating Falls III as his attorney-in-fact.  At the request of Sellers, Cone, Burwell, and other persons acting in concert with or conspiring with Sellers and Cone, a mental evaluation and assessment was conducted on Decedent in January 2014 to determine his mental capacity to execute a power of attorney and health

---

[1]  Trust Amendments other than the Fifth Amendment are not attached to the amended complaint.

11

care power of attorney. The evaluation was done by Manish A. Fozdar, MD, who issued a report dated January 13, 2014.

On or about March 17, 2014, Decedent executed instruments removing Falls III as the Trustee of the GST Trusts, and naming John T. Bode as Successor Trustee. On November 7, 2014, Decedent commenced the Loan Case against Falls III, seeking to recover an alleged loan of $290,000. Plaintiffs allege that Sellers, Cone, and other persons acting in concert with or conspiring with Sellers and Cone influenced and coerced Decedent to file the Loan Case despite allegedly knowing that Decedent had previously agreed in writing that the funds were provided to Falls III as a gift.

On December 10, 2014, Decedent executed a "Fifth Amendment to Revocable Declaration of Trust" (the "Fifth Amendment"), which states:

> This amendment amends and restates in its entirety the trust originally executed by me on the 4th day of August, 2011, amended by first amendment dated December 14, 2012, amended by second amendment dated January 7, 2013, amended by third amendment dated February 19, 2014[,] and amended by fourth amendment dated July 17, 2014[,] and applies to all property titled to this trust.

(Am. Compl., Ex. K (DE 186-11) at 1). The Fifth Amendment grants powers including "Distributions to or for the Benefit of Beneficiaries," who are not specified in the redacted copy of the Fifth Amendment included with the complaint. (Id. at 3-4).[2] According to plaintiffs, plaintiffs are not beneficiaries of the Fifth Amendment. (See Am. Compl. ¶ 77).

The Fifth Amendment directs the "Trustee to take all actions which may be required to keep all leases in full force and effect and fully perform all obligations existing under any leases,

---

[2] Unless otherwise specified, page numbers in citations to documents in the record specify the page number provided by the court's Electronic Case Filing (ECF) system, and not any page number included in the text of the underlying document.

specifically including the [Lease]" relating to the Morehead City house. (Am. Compl., Ex. K (DE 186-11) at 4). According to plaintiff, defendant Goldman Sachs is the Trustee of the Ralph Lane Falls Revocable Declaration of Trust, and has refused to make any rental payments under the Lease. Decedent allegedly lacked capacity to execute the Fifth Amendment, which was allegedly the product of Sellers, Cone, and other persons acting in concert with them to manipulate, coerce, and unduly influence Decedent to disinherit Falls III and Falls III's minor children, and, instead, to make Sellers and Cone the largest beneficiaries of Decedent's estate.

On the same date, Decedent and Sellers obtained a certificate of marriage in Wake County, North Carolina and purportedly were married. According to plaintiff, on that date of both the execution of the Fifth Amendment and purported marriage, Decedent was suffering from diminished mental capacity as the result of recurrence of brain tumors, was dependent upon and submissive to Sellers, and did not have the capacity of dispose of property, execute estate planning documents, or marry.

Approximately two weeks later, Decedent underwent a second brain surgery for recurrence of brain tumors due to aggressive meningioma. Following the surgery and discharge from the hospital, Decedent remained in a convalescent center for several months until his death on May 11, 2015. During this time, Sellers, Cone, and other persons allegedly acting in concert with or conspiring with Sellers and Cone, acted to deny Falls III's access to and communication with Decedent by, among other things, hiding Decedent under aliases in the medical facilities where he was admitted.

According to plaintiff, "Decedent's uncharacteristic and bizarre behavior beginning in 2013 and continuing until his death was the result of fraudulent misrepresentations, undue influence,

coercion, and isolation directed at Decedent by Sellers, Cone, and other persons acting in concert with or conspiring with Sellers and Cone." (Am. Compl. ¶ 73). According to plaintiff, "Sellers, Cone, and other persons acting in concert with or conspiring with Sellers and Cone took numerous steps to interfere with and destroy the relationship between Decedent and Falls III and Falls III's minor children and to deny Falls III and Falls III's minor children reasonable access to Decedent until his death on May 11, 2015," which steps included, without limitation, the following:

a.     Preventing Falls III from visiting Decedent;

b.     Preventing Decedent from visiting and communicating with Falls III's minor children;

c.     Refusing to allow Falls III to speak with Decedent on the telephone and instructing employees in the household not to allow Falls III to speak with Decedent;

d.     Failing to inform Decedent when Falls III called him;

e.     Refusing to allow Falls III to visit Decedent in the hospital and convalescent center;

f.     Failing to keep Falls III informed, and misinforming Falls III, about Decedent's medical status and location of the facilities where Decedent was being treated;

g.     Sending e-mails and letters in Decedent's name instructing Falls III and others not to visit or seek information about his medical status;

h.     Telling Decedent lies about Falls III and making defamatory statements to Decedent that Falls III had stolen money from him;

i.     Instigating and controlling the lawsuit brought by Decedent against Falls III, meeting with Decedent's lawyers and other advisors outside the presence of Decedent, and

instructing Decedent's lawyers on Decedent's purported intentions with respect to that litigation; and

j.    Meeting with Decedent's lawyers and other advisors outside the presence of Decedent and instructing Decedent's lawyers and other advisors as to Decedent's purported intentions with respect to disinheriting Falls III and Falls III's minor children.

(Id. at ¶75).

## COURT'S DISCUSSION

A.    Motions to Dismiss

1.    Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018). When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

2.      Analysis

     a.      Probate exception

Under the "probate exception" to federal jurisdiction, "the equity jurisdiction conferred by the Judiciary Act of 1789" does "not extend to probate matters." Marshall v. Marshall, 547 U.S. 293, 308 (2006) (quotations omitted). The probate exception "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 311-12 (2006). Federal courts "have jurisdiction to entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." Id. at 310 (quotations omitted). "[T]he 'interference' language" is "essentially a reiteration of the general

principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res." Id. at 311 (quotations omitted).

As such, a "suit to annul a will [may be] found supplemental to the proceedings for probate of the will and therefore not cognizable in federal court." Id. at 312 (quotations omitted); see Lee Graham Shopping Ctr., LLC v. Estate of Kirsch, 777 F.3d 678, 681 (4th Cir. 2015) (stating that probate exception applies to a claim "to annul a will"). By contrast, a plaintiff's claim that a third party "tortiously interfered with a gift she expected" from a decedent is cognizable in federal court. Marshall, 547 U.S. at 301, 312; see Lee, 777 F.3d at 681 ("Like the tortious interference claim in Marshall, the contract interpretation question involved here may affect the outcome of the distribution of estate assets, but that question itself requires neither an interpretation of a will nor a distribution of estate assets.").

Based on the foregoing principles, this court lacks jurisdiction over plaintiffs' claim and defendant Wing's crossclaims seeking declaration that the Revocable Trust or its amendments are invalid or seeking to invalidate the same. (Compl. (DE 186) Count I; Crossclaims (DE 202) Counts I and II). Under North Carolina law, "rules of construction that apply in this State to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property." N.C. Gen. Stat. § 36C-1-112. This is due to the recognition of the "functional equivalence between the revocable trust and a will" and that a "revocable trust is used primarily as a will substitute, with its key provision being the determination of the persons to receive the trust property upon the settlor's death." N.C. Gen. Stat. § 36C-1-112. Comment.; cf. Sveen v. Melin, 138 S. Ct. 1815, 1819 (2018) (noting many states treat "revocable trusts" as "will substitutes," following "the lead of the Uniform Probate Code").

Accordingly, plaintiffs' and defendant Wing's claims seeking to invalidate the Revocable Trust or its amendments fall within the probate exception in that they comprise claims functionally equivalent to "annulment of a will and administration of a decedent's estate." Marshall, 547 U.S. at 311.

While defendant Wing originally asserted that federal jurisdiction existed for her crossclaims seeking invalidation of the Revocable Trust, she now has recognized in conjunction with the motion to dismiss by Sellers and the Cone defendants that this court does not have jurisdiction over such claims. (See Def. Wing Mem. (DE 218) at 11). Particularly where the court has dismissed her claims for annulment of marriage, and where plaintiffs and defendant Wing have filed identical claims in state court seeking to invalidate the Revocable Trust or its amendments in conjunction with will caveat proceedings, defendant Wing now "agrees that this Court does, in fact, lack subject matter jurisdiction over her crossclaims." (Id.).

In sum, plaintiffs' claim and defendant Wing's crossclaims seeking declaration that the Revocable Trust or its amendments are invalid or seeking to invalidate the same, (Compl. (DE 186) Count I; Crossclaims (DE 202) Counts I and II), must be dismissed without prejudice for lack of subject matter jurisdiction.

      b.     Abstention

"Under the principles of [Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)], federal courts may abstain from exercising their jurisdiction in the exceptional circumstances where a federal case duplicates contemporaneous state proceedings and 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition

of litigation clearly favors abstention.'" <u>Vulcan Chem. Techs., Inc. v. Barker</u>, 297 F.3d 332, 340-41 (4th Cir. 2002) (quoting <u>Colorado River</u>, 424 U.S. at 817).

"The basic notion underlying the <u>Colorado River</u> doctrine is that in certain circumstances it may be appropriate for a federal court to refrain from exercising its jurisdiction to avoid duplicative litigation." <u>Al-Abood ex rel. Al-Abood v. El-Shamari</u>, 217 F.3d 225, 232 (4th Cir. 2000). "However, such abstention is the exception rather than the rule." <u>Id.</u> "[A] court must apply <u>Colorado River</u> abstention parsimoniously." <u>VonRosenberg v. Lawrence</u>, 781 F.3d 731, 734 (4th Cir. 2015).

"The threshold question in deciding whether <u>Colorado River</u> abstention is appropriate is whether there are parallel suits." <u>Al-Abood</u>, 217 F.3d at 232. "Suits are considered parallel if substantially the same parties litigate substantially the same issues in different forums." <u>Id.</u> (quotations omitted). "If parallel suits exist, then a district court must carefully balance several factors, with the balance heavily weighted in favor of the exercise of jurisdiction." <u>Id.</u> (quotations omitted).

"[T]he decision whether to dismiss a federal action because of parallel state court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case." <u>New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.</u>, 946 F.2d 1072, 1074 (4th Cir. 1991) (quotations omitted). "[S]ix factors have been identified to guide the analysis for <u>Colorado River</u> abstention: (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5)

whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights." Vulcan, 297 F.3d at 341.

The instant case presents exceptional circumstances meeting the criteria for Colorado River abstention. As a threshold matter, there are parallel suits, where the same parties are litigating substantially the same issues in state court. Indeed, there is now a remarkable degree of duplication of litigation in Wake County superior court. In particular, in addition to the caveat proceeding, plaintiffs and defendant Wing have filed complaints and requests for declaratory judgment against remaining defendants in Wake County superior court, seeking invalidation of Revocable Trust and amendments, on multiple grounds encompassing and expanding those asserted in the instant case. (See 17-CVS-3947 (DE 235-11); 17-CVS-3283 (DE 235-12); 18-CVS-5916 (DE 235-14); 18-CVS-5830 (DE 235-16); caveat proceeding (DE 235-13)).

Plaintiffs' and defendant Wing's remaining claims for malicious interference with right to inherit are also being asserted, encompassing the same grounds as here and expanded, in complaints filed in Wake County superior court. (See 18-CVS-5916 (DE 235-14) Count III "Malicious Interference with Right to Inherit"; 18-CVS-5830 (DE 235-16) Count II "Malicious Interference with Right to Inherit" against Sellers, Nancy Ledford ("Ledford") and Louise Falls Cone). Finally, plaintiffs' alternative remaining claim regarding enforcement of the lease also is being asserted as part of his complaint filed in Wake County superior court. (See 18-CVS-5830 (DE 235-16)).

The Colorado River factors considered together strongly favor abstention here. First, "the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others." Vulcan, 297 F.3d at 341. Here, the clerk of Wake County superior court through filings in probate commenced June 8, 2015, may assume exclusive jurisdiction over

Decedent's estate, including for purposes of probate of Decedent's will. N.C. Gen. Stat. §§ 28A-2-1; 28A-2-4; see Marshall, 547 U.S. at 311. The subject matter of the litigation, Decedent's alleged incapacity and undue influence by defendants other than Wing, involves in part such property, even though it also involves much more substantial property passing outside of the will through the Revocable Trust and its amendments.

Second, regarding "whether the federal forum is an inconvenient one," Vulcan, 297 F.3d at 341, the court considers this factor neutral. Although there is no identified inconvenience to the federal forum, it is notable that all five state proceedings are pending in Wake County superior court and defendant Wing has moved to consolidate all those proceedings in that court.

Third, with respect to "the desirability of avoiding piecemeal litigation," Vulcan, 297 F.3d at 341, there is substantial risk of inconsistent litigation results if issues of capacity and undue influence are tried in state court (pertaining, for example, to the caveat proceeding, marriage annulment proceeding, or Revocable Trust invalidation proceedings), while the same issues are tried in federal court. Allowing all issues related to capacity and undue influence, as well as tort and declaratory judgment claims, to be heard in the court with jurisdiction over Decedent's estate will ensure that there is no risk of piecemeal litigation. In addition, while plaintiffs' alternative claim pertaining to the lease against defendant Goldman Sachs raises additional issues of contract interpretation, that claim is nonetheless contingent upon an antecedent determination of validity of the Fifth Amendment to the Revocable Trust.

Fourth, regarding "the relevant order in which the courts obtained jurisdiction and the progress achieved in each action," Vulcan, 297 F.3d at 341, this factor is mixed. While the instant action and crossclaims were filed before the caveat proceeding commenced in state court in 2017,

certificate of probate and letters testamentary were filed in state court on June 8, 2015, prior to commencement of this action. (See caveat proceeding (DE 235-13); letters testamentary (DE 217-1)). The progress in this action has been limited due to delay for settlement proceedings and substantial time spent framing the pleadings, with discovery presently stayed and no trial date set. Moreover, it is notable that defendant Wing's marriage annulment claims already were dismissed by the court in favor of state court jurisdiction on December 18, 2017. While the litigation began predominantly in federal court, in light of that earlier decision and the instant jurisdictional decision based upon the probate exception, the locus of claims now has shifted substantially to state court.

Fifth, it is a significant factor in favor of abstention that state law provides the rule of decision on the merits. Vulcan, 297 F.3d at 341. Not only does state law provide the rule of decision, but also the area of law is one in which state courts have particular experience and expertise, consistent with principles underlying the "probate exception" and "domestic relations exception" to federal jurisdiction. Marshall, 547 U.S. at 311; Ankenbrandt v. Richards, 504 U.S. 689, 692, 703 (1992).

Sixth, state court proceedings adequately will protect the parties' rights, where plaintiffs and defendant Wing have commenced multiple suits in state court including on the same basis as is asserted here. Moreover, all remaining defendants agree that dismissal on the basis of Colorado River abstention is warranted. (See Mem. (DE 207) at 22-23; Reply (DE 222) at 2 & 10 n.3; Joinder (DE 221) at 1-2).

In sum, the Colorado River factors strongly support dismissal of all claims and crossclaims in the instant case in favor of litigation between the parties in Wake County superior court. Moreover, this case presents exceptional circumstances where even the Colorado River factors do

"not fully convey the synergistic effect of all the circumstances" together in the instant case. Vulcan, 297 F.3d at 341. In this respect, it is an additional factor heavily weighing on the court's decision to abstain that defendant Wing is asserting claims and contentions substantially in alignment with plaintiffs, and defendant Wing voluntarily has sought to dismiss her claims in favor of state court litigation. Efficient use of resources and speedy global resolution of the dispute favors litigation of all claims related to administration of Decedent's estate in state court. Additional circumstances bearing on the court's decision to abstain include the fact that all counsel for plaintiffs have moved to withdraw representation and that trial in this court on claim by defendant Goldman Sachs against plaintiff Ralph L. Falls, III, has completed.

Given that the court has determined that dismissal is warranted due to lack of subject matter jurisdiction and on the basis of Colorado River abstention, the court does not reach arguments raised by defendants Goldman Sachs, Sellers, and the Cone Defendants in favor of dismissal for failure to state a claim upon which relief can be granted. In addition, the court does not reach additional grounds for voluntary dismissal asserted by defendant Wing. Rather, the court grants defendant Wing's motion to dismiss her crossclaims for lack of jurisdiction and for abstention principles set forth herein; the court dismisses plaintiffs' claims sua sponte on the same basis; and the court denies as moot the remaining motions to dismiss.

B.      Motion to Amend

A party may amend complaint with "the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962).

Plaintiffs' motion to amend must be denied as futile in light of the court's jurisdictional and abstention determinations herein. The claims plaintiffs seek to add in their proposed amended complaint all are subject to dismissal due to Colorado River abstention, for the same reason as plaintiffs' tortious interference with inheritance and alternative declaratory judgment claim based on the lease must be dismissed. As a supplement to that analysis for purposes of the new types of claims asserted, in addition to the tortious interference with inheritance claim, the court notes substantial overlap of newly proposed claims with those asserted in state court. Plaintiffs and defendant Wing have asserted in state court litigation claims for unjust enrichment, including against Ledford. (See 17-CVS-3947 (DE 235-11); 18-CVS-5916 (DE 235-14)). They have raised issues of fiduciary duty against Sellers on the same basis asserted here. (See 18-CVS-5830 (DE 235-16) ¶ 105). They have also asserted claims for wrongful distributions and injunctive relief against defendant Goldman Sachs. (See 18-CVS-5916 (DE 235-14); 18-CVS-5830 (DE 235-16)).

For these reasons, and those set forth in dismissing plaintiffs' and defendant Wing's claims as set forth above, plaintiffs' motion to amend complaint is denied as futile where the newly proposed claims are subject to Colorado River abstention.

C.    Remaining Motions

For good cause shown, plaintiffs' motions to withdraw counsel (DE 238, 243) are granted. The motion to stay discovery filed by defendant Wing (DE 239) is denied as moot.

**CONCLUSION**

Based on the foregoing, defendant Wing's motion (DE 217) to dismiss her crossclaims is GRANTED for lack of jurisdiction and for abstention principles set forth herein. Such crossclaims are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction and due to abstention. The court DISMISSES sua sponte all of plaintiffs' remaining claims on the same basis, as set forth herein. Such claims are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction and due to abstention. Remaining motions (DE 194, 200, 206, 221) to dismiss for failure to state a claim are denied as moot. Plaintiffs' motion (DE 226) to amend is DENIED. Plaintiffs' motions (DE 238, 243) to withdraw counsel are GRANTED. Defendant Wing's motion (DE 239) to stay discovery is DENIED AS MOOT. The clerk is DIRECTED to close this case.

SO ORDERED, this the 27th day of September, 2018.


LOUISE W. FLANAGAN
United States District Judge